570 F.2d 1138
 Milton CLARK, Frederick W. Rost, St. Regis Apartments, Ltd.,
a California limited partnership, Melvin Balser, Managing
Agent, on behalf of themselves and all others similarly
situated, Appellants in No. 77-1662, Philadelphia Gas Works,
Plaintiff-Intervenor,
v.
GULF OIL CORPORATION and Texas Eastern Transmission Corporation.
Theodore Q. THOMPSON and Jamestown Village Apartments, Ltd.,
a California limited partnership, Melvin Balser,
Managing Agent
v.
GULF OIL CORPORATION, Philadelphia Electric Company and
Texas Eastern Transmission Corporation.
Appeal of PHILADELPHIA GAS WORKS, Plaintiff-Intervenor in No. 77-1661.
 Nos. 77-1661 and 77-1662.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 9, 1977.
Decided Dec. 30, 1977.
 
 Thomas E. Wiener, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Howard D. Scher, Goodis, Greenfield, Henry & Edelstein, Philadelphia, Pa., for Appellants Milton Clark, et al.
 A. Grant Sprecher, Barry J. Hart, Stephen Schachman, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Philadelphia Gas Works.
 John L. McConn, Jr., Butler, Binion, Rice, Cook & Knapp, Houston, Tex., James E. Farrell, Jr., Gulf Oil Corp., Bala-Cynwyd, Pa., for Gulf Oil Corp.
 M. Carton Dittman, Jr., Oliver C. Biddle, Lewis A. Grafman, Linda S. Martin, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Jack D. Head, James W. McCartney, Judy M. Johnson, Vinson, Elkins, Searls, Connally & Smith, Houston, Tex., for Texas Eastern Transmission Corp.
 Before SEITZ, Chief Judge, ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal raises for the first time in this circuit the question of whether a private cause of action for damages against a producer of natural gas for failure to comply with a certificate of public convenience and necessity issued by the Federal Power Commission is implied under the Natural Gas Act, 15 U.S.C. § 717 et seq., in favor of retail distributors and ultimate consumers of natural gas.
 
 
 2
 The appellants Clark, et al., filed a purported class action in the United States District Court for the Eastern District of Pennsylvania against Gulf Oil Corporation ("Gulf") and Texas Eastern Transmission Corporation ("Texas Eastern"). Plaintiffs request certification under Rule 23, Fed.R.Civ.P., to represent consumers of natural gas in the Philadelphia area, the area supplied by Philadelphia Gas Works ("PGW"), seeking damages, equitable relief, and costs. The appellants Theodore Q. Thompson, et al., alleging that they represent the users of natural gas supplied by Philadelphia Electric Company ("PECO"), filed a similar class action in the United States District Court for the Eastern District of Pennsylvania. The Clark and Thompson complaints contain three separate asserted causes of action: (1) an implied private cause of action purportedly arising under the Act; (2) a breach of contract action as third party beneficiaries under a gas purchase contract between Gulf and Texas Eastern, and (3) an action based on Gulf's and Texas Eastern's alleged conspiracy to withhold natural gas from the interstate market. The district court consolidated the Clark and Thompson cases and PGW was granted leave to intervene.
 
 
 3
 The district court dismissed the complaint against Philadelphia Electric Company for lack of complete diversity of citizenship. As to the other defendants, the district court held that no private cause of action exists under the Natural Gas Act and on that basis it granted Gulf's motions to dismiss the complaint against it.[1] The district court, however, granted certification pursuant to 28 U.S.C. § 1292(b) to permit plaintiffs and PGW to seek an interlocutory appeal on the issue of whether plaintiffs may pursue a private right of action against Gulf under the Natural Gas Act.[2] This court granted permission to appeal by order dated April 26, 1977. We find no merit in the limited issue before us and affirm the order of the district court.
 
 I.
 
 4
 This appeal is a companion case to Gulf Oil Corp. v. Federal Power Commission, 563 F.2d 588 (3d Cir. 1977), in which the plaintiffs had intervened. In that case, we affirmed the order of the Federal Power Commission ("FPC") requiring Gulf to deliver to Texas Eastern greater quantities of gas than it had been delivering and ordering performance and refunds by Gulf. Because the detailed statement of the factual background underlying this proceeding is set forth in our opinion, Gulf Oil Corp. v. FPC, supra, a skeletal statement should suffice for an understanding of the single issue raised in this appeal.
 
 
 5
 The intervenor, Philadelphia Gas Works, is a municipally owned gas distribution facility serving commercial, industrial, and residential users within the City of Philadelphia. For almost thirty years, it has been a customer of Texas Eastern, one of two such pipeline companies that supplies in excess of 97 percent of the natural gas consumed in Pennsylvania. The Clark plaintiffs are customers of PGW.
 
 
 6
 In 1963, Texas Eastern entered into a gas purchase contract with Gulf for the purchase of approximately 4.4 trillion cubic feet (Tcf) of gas to be supplied in minimum daily quantities. This contractual arrangement was approved under a certificate of public convenience and necessity issued by the FPC on December 19, 1963. Gulf Oil Corp., 30 FPC 1559 (1963). Under the certificated contract, Gulf was to supply Texas Eastern with the gas over a 26 year period at a price not to exceed 21 cents per thousand cubic feet. Under the contract, as entered into subsequent to the issuance of the certificate and pursuant thereto, Gulf warranted itself to provide Texas Eastern a certain minimum amount of gas per day subject to Texas Eastern's demand for delivery of that amount. On November 7, 1975, the FPC issued an order directing both Texas Eastern and Gulf to show cause why they were not in violation of the certificate of public convenience and necessity issued in 1963. These appellants intervened in those proceedings and, after hearings, the Commission issued opinions No. 780 and 780-A which were the subject of review in this court at Gulf's behest in Gulf Oil Corp. v. FPC, supra. In the foregoing opinion, the FPC found, and we agreed, that under the certificate of public convenience, Gulf is obligated to deliver 625,000 Mcf (thousand cubic feet) of gas per day except when Texas Eastern demands less until the expiration of its contract to Texas Eastern.
 
 
 7
 In addition to ordering Gulf to comply prospectively, the FPC ordered Gulf to refund to Texas Eastern for flow through to the latter's customers a sum equal to the difference between Texas Eastern's request for gas and Gulf's deliveries multiplied by the difference between the contract price and the otherwise applicable area or national rates and interest. The refunds were payable both for Gulf's past defaults and in the event of future defaults on its delivery obligations.[3] Because appellants herein claim that their cost of replacing Gulf's underdeliveries greatly exceeded the formula price devised by the FPC, they sought rehearing on the proper measure of damages. In its opinion 780-A issued December 9, 1976, the FPC noted that though the relief it afforded might not in fact fully compensate the distributors/customers for the damages they had incurred, it concluded that its formula was "an equitable estimate of damage to customers." In its opinion, however, the FPC did not limit those injured by Gulf's underdeliveries to the relief granted by the Commission. Instead, it stated that its order did not preclude customers and distributors served through Texas Eastern's system from seeking further compensation outside the Commission. Appellants turn to that statement of the Commission in their briefs and oral argument in this court as a partial basis for the monetary relief they seek in this proceeding.
 
 II.
 
 8
 A threshold question we must first address is whether the district court had subject matter jurisdiction over this case.[4] Gulf contends that under Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), there is no federal question jurisdiction because the complaints show on their face that the plaintiffs' claims do not, in fact, arise under the Constitution, laws or treaties of the United States. Gulf asserts that because the basic allegations in the complaints charge the breach of the Gas Purchase Contract, for which the plaintiffs seek damages and equitable relief, the cause of action does not arise under federal law and so cannot be heard in the federal court absent diversity of citizenship. Gulf further asserts that plaintiffs add nothing to the complaint when they allege that the contract was "certificated" by the FPC and that by breaching the contract, Gulf also breached section 7 of the Natural Gas Act.
 
 
 9
 PGW responds to Gulf's argument by pointing out that Gulf's conduct is actionable under federal law as a breach of the certificate of public convenience and a violation of the Natural Gas Act. PGW asserts that although the same conduct by Gulf may be actionable under state law on a third party beneficiary breach of contract theory, its complaint does in fact allege a violation of federal law with resultant damages.
 
 
 10
 We do not believe that Skelly Oil, supra, supports Gulf's position. In that case, Skelly and others contracted with Phillips to sell it natural gas for resale to Michigan-Wisconsin Pipeline Co. ("Michigan-Wisconsin"). The contracts provided that the sellers would have the right to cancel the contracts in the event Michigan-Wisconsin failed to secure a certificate of public convenience from the FPC by October 1, 1946. The right of cancellation was to be exercised by written notice delivered to Phillips at any time after December 1, 1946, "but before the issuance of such certificate." On November 30, 1946, the Commission ordered the issuance of a certificate to Michigan-Wisconsin on certain stated terms and conditions. Although news of the Commission's action was released the same day, the actual content of its order was not made public until December 2, 1946. On that same day, the sellers gave notice of cancellation. Phillips and Michigan-Wisconsin then brought suit in the federal district court against the sellers for declaratory judgment because a certificate of public convenience had been issued "within the meaning of said natural gas act and said contracts" and that the contracts were "still in effect and binding." A motion to dismiss the complaint for want of jurisdiction was denied, and the district court held the contracts to be binding. The Tenth Circuit affirmed. In reversing with directions to dismiss, the Supreme Court held that the action did not arise under the laws of the United States and that it should have been dismissed as to certain defendants because jurisdiction could not have been sustained as to them on grounds of diversity of citizenship. A reading of the case reveals that the plaintiffs' pleadings did not allege any violation of federal law but merely an anticipatory defense based on federal law. The Supreme Court concluded that would not do.[5]
 
 
 11
 In the instant case, however, the complaints aver an "action to recover damages and secure equitable relief for injuries (plaintiffs) have sustained as a direct result of violations by defendants of section 7 of the Natural Gas Act, 15 U.S.C. § 717(f) . . . ." Whether they are entitled to such relief is, of course, the question to be decided. But it is clear they have alleged injuries flowing from a violation of federal law which would give the district court subject matter jurisdiction. Under Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1973), and Gagliardi v. Flint, 564 F.2d 112 (3d Cir. 1977), allegations in a complaint of a right to relief under federal law are sufficient to vest the district court with federal question jurisdiction unless the claim is wholly insubstantial and frivolous, or it is made solely for the purpose of obtaining jurisdiction and the alleged claim appears to be immaterial under the federal statute or constitution. Bell v. Hood, supra, 327 U.S. at 681-82, 66 S.Ct. 773. In the instant case, the question whether there exists a private cause of action under the Natural Gas Act has not yet been decided and cannot be said to be insubstantial.
 
 
 12
 The other cases that Gulf cites to support its position are inapposite. In Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961), Cities Service Gas Company sued Texaco and Pan American in Delaware Superior Court to recover charges for natural gas in excess of the contracts between them. The overcharges had resulted from an order of the Kansas Gas Commission, later set aside by the United States Supreme Court. In its complaint, Cities Service proceeded on a breach of contract theory, but pleaded the Supreme Court's overturning of the Kansas order in anticipation of the expected defense by Texaco and Pan American that the higher rates were compelled by law. Texaco and Pan American moved for summary judgment in the Delaware court, the motion was denied, and the two defendants then petitioned the Delaware Supreme Court for a writ of prohibition against further proceedings in the Superior Court. Their theory was that the Natural Gas Act had deprived state courts of jurisdiction over the subject matter of the cases. The Delaware Supreme Court sustained the jurisdiction of the Superior Court and defendants appealed to the United States Supreme Court. The Supreme Court affirmed.
 
 
 13
 Even though the Natural Gas Act vests the federal courts with exclusive jurisdiction over suits arising under the Act, the Supreme Court explained, the question whether a particular suit falls within this grant of exclusive jurisdiction depends on the pleadings. Holding that the complaints in the Delaware Superior Court determine the nature of the suit before it, the Supreme Court declared that the rights asserted by the plaintiff were traditional common law claims that did not lose their character "because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas." Id. at 663, 81 S.Ct. at 1308.
 
 
 14
 Gulf cites Pan American Corp. v. Superior Court for the proposition that the present plaintiffs cannot make this a federal case by characterizing what are nothing but common law claims as claims under the Natural Gas Act. The case, of course, does not support this proposition: as the Court said, "the party who brings a suit is master to decide what law he will rely upon," 366 U.S. at 662, 81 S.Ct. at 1307, quoting The Fair v. Kohler Die and Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913), and the plaintiffs in this suit have clearly chosen to rely on federal law.
 
 
 15
 Gulf supports its contention that the allegation of breach of certificate and violation of the Natural Gas Act add nothing to what is in reality a breach of contract action by citing Saturn Oil & Gas Co. v. Northern Natural Gas Co., 359 F.2d 297 (8th Cir. 1966). The case grew out of the same situation as Pan American, supra. A gas producer charged a gas distributor rates in excess of the contract between them under compulsion of an order by the Kansas Gas Commission. After the Supreme Court set aside the Commission's order, the distributor brought an action against the producer for a refund of the overcharges. The entire discussion on which Gulf now relies is as follows:
 
 
 16
 The rights of the parties hereto are based upon the contract. It is well settled that the type of action here involved is not barred or superseded by the provisions of the Federal Natural Gas Act. See Pan American Petroleum Corp. v. Superior Court of Delaware, 366 U.S. 655, 663, 81 S.Ct. 1303, 6 L.Ed.2d 584 . . . .
 
 
 17
 For the same reasons that Pan American itself is irrelevant to this case, Saturn Oil is also. It simply does not speak to the question whether there is federal jurisdiction over an action based upon the Natural Gas Act.
 
 
 18
 We are not persuaded that the appellants' cause, of first impression in this court, is insubstantial or frivolous; the complaints raise serious questions under the Natural Gas Act which the district court could have decided only after it assumed jurisdiction over the controversy. We therefore hold that the district court had federal subject matter jurisdiction of the case.
 
 III.
 
 19
 In light of the district court's proper assertion of subject matter jurisdiction, it remains for us to determine whether the district court's holding that there is no implied private cause of action under the Natural Gas Act against Gulf is correct. Plaintiffs' complaints in substance allege that Gulf and Texas Eastern intended that the 1963 Gas Purchase Contract between them be for the benefit of the distributor/customers of Texas Eastern and that plaintiffs are such customers. The contract was "certificated" by the Federal Power Commission and a certificate of public convenience was issued to, and accepted by, Texas Eastern. Beginning sometime in 1971, Gulf failed on an intermittent basis to meet its delivery obligations to Texas Eastern as required under the certificated Gulf contract and as demanded by Texas Eastern. Beginning in 1973 Gulf began regular underdeliveries to Texas Eastern of quantities demanded by Texas Eastern under the contract, and the deficits have continued to the present. As a result of the shortfall, PGW has been required to purchase additional supplies of natural gas on a short-term basis directly from other suppliers, and make other supplementations which have resulted in much higher cost to PGW and its customers and which all of the plaintiffs claim have caused them damages.
 
 
 20
 On appeal to this court, plaintiffs argue that Gulf has violated sections 7(b), (c) and (e) of the Natural Gas Act.
 
 
 21
 In determining whether a private right of action is implicit in a statute not expressly providing one, Mr. Justice Brennan, writing for the Supreme Court in Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), indicated that at least the following factors are relevant: First, is the plaintiff one of the class for whose especial benefit the statute was enacted? Second, is there any indication of legislative intent, either to create a private cause of action or to deny one? Third, is the implication for a private remedy consistent with the underlying purpose of the legislative scheme? Fourth, is the cause of action traditionally relegated to state law, thereby rendering it inappropriate to infer a cause of action solely on federal law? Id. at 78, 95 S.Ct. 2080.
 
 
 22
 The district court held that implying a private right of action for damages under the Natural Gas Act would not meet three of the four factors established by Cort. The district court did not address the first standard of whether plaintiffs fell within the class for whose especial benefit the statute was enacted, concluding that even if they were, this would not be sufficient to overcome their failure to meet the other three Cort tests. The district court noted that under the congressional regulatory scheme established for the natural gas industry, the FPC may obtain enforcement of its decision in the district court and may develop remedies that enhance the statutory objectives. It also expressed concern that a jury trial de novo in the district court could possibly result in a verdict inconsistent with the FPC's findings in the administrative proceedings which would inevitably lead to "chaos, confusion, and duplication (of) the regulatory scheme." The district court recognized that Congress had provided for review of decisions and orders of the FPC by courts of appeals to which district courts must defer; that the district court's role would necessarily be subordinated to providing remedies in addition to those fashioned by the FPC; and that the FPC was in a more strategic position to fashion remedies to implement the regulatory scheme and carry out its objectives, including the ordering of rate adjustments, refunds, or making declaratory orders. The court also concluded that legal problems relating to natural gas shortages do not lend themselves to piecemeal solutions by separate district court decisions. In sum, then, the district court's analysis of Cort revealed no implied private right of action under the Natural Gas Act.
 
 
 23
 Before we commence our analysis of plaintiffs' implied cause of action claim, we must first ascertain precisely what relief it is they seek. Although it is not clear from the complaint or throughout most of its brief what relief PGW seeks, PGW does at one point state:
 
 
 24
 What PGW seeks . . . is immediate monetary relief to cover fully the costs PGW incurred in securing replacement gas over and above the limited monetary relief afforded by the FPC. As with the monetary relief secured from the FPC, PGW concedes the necessity of restoring such amounts to Gulf based on the timetable set forth by the FPC in opinion No. 780.
 
 
 25
 At oral argument before us, counsel for the Clark group expressly stated that his plaintiffs sought identical relief. It appears, therefore, that plaintiffs' proposed right of action seeks no more than to supplement the refunds already awarded by the FPC, an award we have recently affirmed.
 
 
 26
 Our initial inquiry, under the Cort test, is whether plaintiffs are among the class for whose especial benefit the statute was enacted? We believe the overall purpose of the Natural Gas Act is to protect the interest of consumers in an adequate supply of gas and at reasonable rates. The Supreme Court stated the primary aim of the Act in more colorful terms the protection of consumer interests against exploitation at the hands of natural gas companies. FPC v. Louisiana Power & Light Co., 406 U.S. 621, 631, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); FPC v. Hope Gas Co., 320 U.S. 591, 610, 64 S.Ct. 281, 88 L.Ed. 333 (1944). "The aim of the Act was to protect ultimate consumers of natural gas from excessive charges." FPC v. Interstate Gas Co., 336 U.S. 577, 581, 69 S.Ct. 775, 778, 93 L.Ed. 895 (1949). This does not end the matter, however, because even though plaintiffs may be among the class for whose especial benefit the statute was enacted, it does not necessarily follow that they have an implied cause of action for damages under the Act.
 
 
 27
 We therefore turn to the second factor of Cort and inquire whether there is any indication of legislative intent, explicit, or implicit, to imply a private remedy in the Act or to deny one. Plaintiffs' contention that there is an implied private right of action draws heavily on J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). In that case, a stockholder of the J. I. Case Co. brought a suit in the federal court for deprivation of his preemptive rights in J. I. Case Co. by reason of a merger between Case and the American Tractor Corporation in violation, inter alia, of section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a). The plaintiff in Borak relied substantially on section 27 of the 1934 Act, 15 U.S.C. § 78aa, which gives the district courts exclusive jurisdiction of all suits in equity and actions at law brought to enforce any liability or duty created thereunder.
 
 
 28
 PGW, in the instant case, compares similar language in section 27 of the Securities Exchange Act to section 22 of the Natural Gas Act and concludes, citing Borak, that the grant of jurisdiction in the Natural Gas Act should be read as evidence of congressional intent to create a private right of action for violations of the Act.[6]
 
 
 29
 In Piper v. Chris Craft Industries, Inc., 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), the Supreme Court refused to imply a remedy under the same 1934 act that figured in Borak notwithstanding the continued existence of the section 27 grant of jurisdiction. The Court adverted to the reasoning of Borak that "where congressional purposes are likely to be undermined absent private enforcement, private remedies may be implied in favor of the particular class intended to be protected by the statute." Id. at 25, 97 S.Ct. at 941. The Court emphasized that Borak had implied a remedy "because of practical limitations upon the SEC's enforcement capabilities" that made " '(p)rivate enforcement . . . a necessary supplement to Commission action.' " Id., quoting J. I. Case v. Borak, 377 U.S. at 432, 84 S.Ct. 1555 (emphasis supplied by Piper opinion). See Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).
 
 
 30
 It is apparent, then, that a general grant of jurisdiction such as that provided by section 22 of the Natural Gas Act is not conclusive evidence of a congressional intent to provide a private remedy. The language of section 22 of the Natural Gas Act makes good sense because other sections of the Act provide for action and litigation in the district court, making section 22 operative without necessarily implying a private right of action for damages. The grant of jurisdiction in the district courts need not be read as extending beyond those causes of action expressly provided for elsewhere in the Act. It does not apply necessarily to causes of action which are not provided for in the statute. We must therefore examine the congressional scheme under the Natural Gas Act to determine whether a private cause of action is necessary to effectuate the policy and purpose of that scheme.
 
 
 31
 Sections 7(b), (c), and (e) of the Natural Gas Act make no express provision whatsoever for a private cause of action.[7]
 
 
 32
 Section 7(b) is designed to give the FPC control over the abandonment of facilities or service subject to its jurisdiction. Section 7(c) prohibits a natural gas company subject to the Commission's jurisdiction from engaging in the transportation or sale of natural gas unless such company has in force a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations. Both sections are absolutely barren of any explicit expression or of any implied indication that a private right of action for damages is contemplated for a violation of the Act. Nor is there any express provision that denies a private cause of action for a violation. These sections, however, are typical provisions in the regulatory scheme of public utilities.[8] The statutory requirement in section 7(b) that there first be a determination that the supply of gas is depleted and that a further continuance of service is unwarranted before abandonment is intended to insure the availability of a necessary energy resource. It is the Commission's task to facilitate and maintain that availability. The requirement in section 7(c) is intended to prevent wasteful competition in the sale and distribution of an important natural resource.[9] Therefore, the Commission is expressly charged with the duty and responsibility of determining whether the proposed service is or will be necessary and whether it "will be required by the present or future public convenience." 15 U.S.C. § 717f(e) (1970). This provides the Commission with the machinery to curb unnecessary and wasteful competition and to examine the adequacy of the proposed service. Thus, its primary purpose is to regulate competition among natural gas companies and prohibit anyone from competing until after the Commission has determined whether the proposed operation is necessary, whether it will serve the public convenience and whether the applicant can render an adequate service at fair and reasonable rates.
 
 
 33
 Furthermore, the Commission is charged under the Act with the power of oversight and regulation: It carries the responsibility for determining whether rates to be charged are fair and reasonable and whether the proposed service to localities and persons and the proposed classes of service are impartial and non-discriminatory. 15 U.S.C. § 717c (1970). The Commission has the power after conducting a hearing to grant certificates of public convenience and necessity, to fix just and reasonable rates and practices, and to order a decrease in rates when they are unjust, preferential, unduly discriminatory, otherwise unlawful, or are not the lowest reasonable rates, 15 U.S.C. § 717d (1970). It may also permit abandonment of facilities or services. The Commission is empowered to prescribe a system of accounts to be kept by such natural gas companies, and to classify such accounts. 15 U.S.C. § 717g(b) and (c) (1970).
 
 
 34
 Finally, the enforcement provisions of the Act give the Commission broad administrative powers, the power to prescribe and issue orders and regulations, and to bring actions to enforce the public interest whenever there are violations of the Act. 15 U.S.C. § 717o (1970). The Commission has extensive powers to investigate complaints or violations, including complaints of any state, municipality, or State commission, to conduct hearings, compel attendance of witnesses and production of records from any place in the United States or to order testimony by deposition. 15 U.S.C. § 717m. When it appears to the Commission that any person is engaged in or is about to engage in activity which may violate the Act or any rule, regulation, or order thereunder, the Commission may bring an action to enjoin the same in any United States District Court. 15 U.S.C. § 717s(a).
 
 
 35
 In view of Congress' evident intent to create a comprehensive and effective regulatory scheme for the transportation and sale of natural gas in interstate commerce, built upon a carefully conceived and structured system for enforcement of the Act's provisions, we conclude that Congress did not contemplate a private cause of action for damages by retail customers whenever a regulated natural gas company breaches its certificate of public convenience and necessity under the Natural Gas Act.
 
 
 36
 Plaintiffs contend, citing as compelling authority Farmland Indus., Inc. v. Kansas-Nebraska Natural Gas Co., Inc., 486 F.2d 315 (8th Cir. 1973), that Gulf's underdeliveries to Texas Eastern of the demanded quantities under the contract constitute the basis for an implied right of action under section 7(b).[10] We disagree. In Farmland, the Eighth Circuit affirmed a district court opinion which held that there was an implied private right of action in favor of a direct industrial consumer against a natural gas company that violated section 7(b) by terminating gas supply service, through facilities constructed under a certificate of necessity and convenience, without prior FPC approval. Significantly, Farmland precedes the quadripartite test in Cort v. Ash, supra, to determine the existence of an implied private right of action, as well as our later decision in Polansky v. Trans World Airlines, Inc., 523 F.2d 332 (3d Cir. 1975). In Polansky, we expressed the view that each incident alleged in connection with violations of section 1374(b) of the Federal Aviation Act,[11] specifically prohibiting discrimination by any regulated carrier, must be tested against the standards stated by the Supreme Court in Cort. Therefore, no implied private right of action for damages can be found here unless the violated statutory sections meet the Cort standards. Second, the opinion of the district court in Farmland plainly discloses that the utility, unlike Gulf in the instant case, had permanently ceased delivery of all gas at the expiration of their gas purchase contract. Thus, the finding of abandonment was predicated upon the permanent cessation of all service at the expiration of the contract term without Commission approval. Farmland Indus. v. Kansas-Nebraska Natural Gas Co., Inc., 349 F.Supp. 670, 676 (D.Neb.1972).
 
 
 37
 We believe our conclusion that no private cause of action is implied is further supported by Montana-Dakota Util. Co. v. Northwest Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951). In that case the plaintiff electric company sued in federal district court to recover losses suffered as a result of allegedly fraudulent and unlawful rates charged by the defendant public utility company as a result of a prior interlocking directorate in which the defendant was involved. Both companies were subject to the Federal Power Act. Like section 4 of the Natural Gas Act, section 205(a) of the Federal Power Act requires that rates and charges be just and reasonable and those that were not were "declared to be unlawful." Jurisdiction in the United States district court was asserted under section 317 of the Federal Power Act, comparable to section 22 of the Natural Gas Act. The Supreme Court, however, refused to imply a private cause of action for violation of the Power Act, holding that the right to a reasonable rate is the right to the rate which the Commission fixes, and that "except for review of the Commission's orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one." Id. at 252, 71 S.Ct. at 695. In the instant case, the FPC has the power, the flexibility, and resourcefulness to compel compliance with the certificate and to fashion and implement appropriate remedies for the shortfall in Gulf's deliveries and we perceive nothing in the congressional scheme to imply a private cause of action for damages for a violation of the Gas Act.
 
 
 38
 The foregoing analysis of the Natural Gas Act should also be sufficient response to the third factor in Cort v. Ash, whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiffs. We believe it is not. Congress has delegated under its comprehensive scheme extensive regulatory powers to the Commission in an essential and monopolistic industry to grant certificates of public convenience when the public welfare dictates and the authority to effectuate compliance with such a certification. The Commission has the authority to establish rules and standards in making such determinations; it has exclusive jurisdiction to determine whether the proposed service will adequately serve the public interest and whether a rate meets the "just and reasonable" standard of the Act, 15 U.S.C. § 717c (1970), Northern Natural Gas Co. v. Kansas Comm'n, 372 U.S. 84, 89, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963); and Congress has granted the Commission "rate-setting authority . . . over all interstate sales for resale." FPC v. Louisiana Power & Light Co., 406 U.S. 621, 639, 92 S.Ct. 1827, 1837, 32 L.Ed.2d 369 (1972). Curtailment of deliveries in this foreboding era of energy crises, including natural gas shortages, fall peculiarly within the FPC's responsibilities under the head of its "transportation" jurisdiction. "The Commission must possess broad power to devise effective means to meet these responsibilities." Id. at 642, 92 S.Ct. at 1839. Accord, Reynolds Metals Co. v. FPC, 175 U.S.App.D.C. 177, 182, 534 F.2d 379, 384 (1976).
 
 
 39
 There are thousands of contracts between gas transmission companies and their suppliers, each of which must be certified by the Commission under section 7 of the Act. There are thousands of contracts between pipeline companies and their distributors also certificated by the Commission. If each of them, as well as the many millions of ultimate consumers thereby affected, could bring a private cause of action for an alleged violation of a certificate of public convenience, an industry essential to the health and welfare of the nation could conceivably be litigated to exhaustion. The uniform regulatory scheme devised by Congress could be disrupted, seriously disabled, and possibly destroyed. Conflicting decisions among the courts and between the courts and the Commission concerning duties and liabilities would be inevitable and the responsibilities of the Commission under the Act unmanageable.[12] We therefore conclude that it is not consistent with the underlying purpose of the regulatory scheme to imply a private remedy in damages for a breach of the Act.
 
 
 40
 The conclusion we reach is especially applicable to the instant case because of the limited nature of the relief sought by plaintiffs. Although plaintiffs seek immediate monetary relief, the money sought is not in the traditional form of outright damages, but money which must eventually be restored to Gulf in accordance with the timetable prescribed by the FPC when the gas contracted for is delivered. The computation of the amount of the relief required, the machinery for recoupment and ordering a resetting of the rates to accomplish the same, in our view, are not within the competence and powers of the courts. Even if they were, such tasks are best left to the expertise, organization, and enforcement machinery created by Congress. The national purpose, powers, and structure of the FPC negate the claim that the ultimate consumers of gas "were intended to have additional weapons in the form of an implied cause of action for damages," Piper v. Chris Craft Indus., Inc., supra, 430 U.S. at 38, 97 S.Ct. at 947, particularly when, as here, the money sought must eventually be returned. As we have previously indicated, the money to be paid by Gulf under our decision is "nothing more than a temporary performance bond made necessary by Gulf's failure to fulfill the terms of its certificate," Gulf Oil Corp. v. FPC, supra, 563 F.2d at 608. Under these conditions, an implied cause of action for damages does not add significant additional protection for ultimate consumers of gas but might well disrupt the congressional scheme devised for the regulation of an essential industry and the protection of the public generally.
 
 
 41
 For reasons stated in the preceding paragraph we need not dwell long on the fourth factor in the Cort analysis, whether the cause of action is one traditionally relegated to state law. Because the fundament of Gulf's certificate of public convenience is the Gas Purchase Contract between Gulf and Texas Eastern, the claims plaintiffs advance as third-party beneficiaries for breach of contract are "traditionally relegated" to state courts. As we have pointed out, however, the remedy which plaintiffs seek is not typical money damages. Rather, they seek an unusual, limited money relief which they must ultimately return to Gulf upon the future delivery of the shortfall in accordance with the timetable fixed by the Commission in its opinion No. 780. Under such circumstances, the fourth factor in Cort has little relevance to the instant case.
 
 IV.
 
 42
 We find no merit in the arguments advanced by plaintiffs for an implied private right of action for damages for a violation of the Natural Gas Act. Accordingly, the judgment of the district court will be affirmed.
 
 
 
 [1]
 In the context of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, we assume for the basis of our discussion that all facts pleaded by the plaintiffs are true. Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)
 
 
 [2]
 PGW asserts in its brief that Texas Eastern has violated sections 7(b), 7(c), and 7(e) of the Natural Gas Act. The purported violations arise from Texas Eastern's lack of due diligence in protecting its customers' statutory rights by failure to seek enforcement of Gulf's duty to deliver to Texas Eastern the statutorily mandated daily contract quantities of gas pursuant to its certificate of public convenience and necessity
 As to Texas Eastern, the class action appellants (plaintiffs) do not assert a cause of action against it arising out of the Natural Gas Act; the certification of the district court of the controlling question of law is limited to Gulf Oil Corporation.
 
 
 [3]
 Coupled with the refund provision is a recoupment order which permits Gulf, once it has "delivered an amount of gas equivalent to the contract amount less the amounts of gas for which it has paid refunds . . . to charge the contract price plus the amount of the refund previously paid on an equivalent amount of gas. . . . Over the entire contract, Gulf would have received exactly the contract price for all 4.4 Tcf, but it would, in effect, have been required to lose the time value of its money required to compensate its customers for their losses due to Gulf's non-delivery in accordance with the terms of the contract." Opinion No. 780-A quoted in Gulf Oil Corp. v. FPC, supra, 563 F.2d p. 604
 By coupling the recoupment provision to the refund order, the FPC made it clear that it did not consider the refund as equivalent of damages. In the view of the FPC, Gulf could not be ordered both to compensate the customers of Texas Eastern for their additional expenses and to deliver the full 4.4 Tcf required by its contract with Texas Eastern: the customers were not entitled to both damages and specific performance.
 
 
 [4]
 The district court did not reach the issue of whether there is federal question jurisdiction
 
 
 [5]
 The Supreme Court in Skelly Oil, supra, observed that "(t)o sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because, as in this case, artful pleadings anticipate a defense based on federal law would contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purposes of the Declaratory Judgment Act." 339 U.S. at 673-74, 70 S.Ct. at 880
 
 
 [6]
 Comparable language in section 22 of the Natural Gas Act, 15 U.S.C. § 717u, reads as follows:
 The district court of the United States . . . shall have exclusive jurisdiction of violations of this chapter, or the rules, regulations, and orders thereunder, and of all suits in equity or actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder.
 
 
 [7]
 Section 7(b), 15 U.S.C. § 717f(b) (1970), provides in pertinent part:
 No natural gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission . . . .
 Section 7(c), 15 U.S.C. § 717f(c) (1970), provides in pertinent part:
 No natural-gas company . . . shall engage in the . . . sale of natural gas, subject to the jurisdiction of the Commission . . . unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations.
 Section 7(e), 15 U.S.C. § 717f(e) (1970), provides in pertinent part:
 (A) certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale (or) service . . . covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed . . . and that the proposed service, sale, or operation . . . to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; . . ..
 Although plaintiffs conclusionally allege also a violation of section 7(e), they state no facts implicating this section and we hold that plaintiffs have not stated a case in violation of this section of the Act.
 
 
 [8]
 There are similar provisions in the Interstate Commerce Act (49 U.S.C. § 1(18-20)), the Communications Act of 1934 (47 U.S.C. § 214) and the Motor Carrier Act (49 U.S.C. §§ 304, 306, 307, 308)
 
 
 [9]
 The hearing before the House Committee on Interstate Foreign Commerce discloses:
 It was the express intention of Congress in enacting the existing certification section of the Natural Gas Act to prevent wasteful competition of natural gas companies. H.R.Rep. # 1290, 77th Cong. 1st Sess. 19411.
 
 
 [10]
 PGW concedes in its brief in this court that the FPC did not consider in its opinion 780 whether Gulf's underdeliveries of the daily contract quantities constituted a de facto abandonment within the meaning of section 7(b) of the Act, 15 U.S.C. § 717f(b). "In opinion 780-A, the Commission placed exclusive reliance on section 7(c), even after section 7(b) was brought to its attention on the issue of refunds." Gulf Oil Co. v. FPC, supra, 563 F.2d 605 n. 20
 
 
 [11]
 49 U.S.C. § 1374(b) (1970)
 
 
 [12]
 While Chief Judge Seitz fully supports the opinion of the court, he does not join in this paragraph. He believes the views expressed therein are unnecessary to the determination of this case and fears they are, at least in part, of questionable soundness