**Michael and Erna LAKE, and All Others Similarly Situated, Plaintiffs,**

v.

**FIRST NATIONWIDE BANK, Defendant.**

Civ. A. No. 93–21.

United States District Court, E.D. Pennsylvania.

July 29, 1994.

Jeffry B. Herman, Cary L. Flitter, Lundy, Flitter & Beldecos, P.C., Narberth, PA, Charles S. Zimmerman, Barry G. Reed, Zimmerman Reed, Minneapolis, MN, for plaintiffs.

Arthur Newbold, M. Frances Ryan, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs Michael and Erna Lake have brought this action on behalf of themselves and all others similarly situated against de-

fendant First Nationwide Bank, alleging a variety of federal and state causes of action. The Lakes and First Nationwide having reached an amicable settlement of this case, they now seek the Court's preliminary approval of the proposed class action and settlement, and approval of the proposed notice to the putative class members. In response to the Court's questions concerning its jurisdiction to entertain this suit and the disposition proposed by the parties, the Lakes have filed a supplemental memorandum on that issue.[1] Upon review of the parties submissions and the relevant authorities, the Court concludes that it does have jurisdiction to approve the proposed settlement, and grants conditional approval to the proposed class, class representatives, and class settlement.

## I. DISCUSSION

The Lakes are residents of Pennsylvania. First Nationwide holds and services[2] a residential mortgage on the Lakes' home. Pursuant to the mortgage agreement between the parties, First Nationwide maintains an escrow account on behalf of the Lakes, funded by monthly payments and used to pay property taxes and insurance premiums as they become due. The Lakes allege that First Nationwide keeps a so-called "cushion," or overage, in the escrow account that is in excess of the amount allowable by the mortgage's contractual provisions and/or the pro-

visions of § 10 of the Real Estate Settlement Procedures Act (the "RESPA"), 12 U.S.C. § 2609, which limits the amount of money that a borrower can be required to deposit into an escrow account in connection with a federally related mortgage loan.[3] The miscalculation is alleged by the Lakes to apply to thousands of similarly situated mortgagees throughout the United States whose mortgages are held or serviced by First Nationwide, with an average surplus in each escrow account of several hundred dollars. The Lakes' complaint asserts an implied right of action on the basis of the alleged violation of § 10 of the RESPA, as well as state law claims for breach of contract, misrepresentation, breach of fiduciary duty, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 to –9.2 (1993), and they seek to continue the case as a class action.

At the hearing held by the Court on February 1, 1994, to assess the Lakes' request for approval of the proposed class as well as for preliminary approval of the proposed settlement reached between the Lakes and First Nationwide, the Court *sua sponte* broached the issue of subject matter jurisdiction. While both parties wish the Court to exercise jurisdiction in this matter, it is beyond question that parties may not create subject matter jurisdiction either by agreement or consent. *See Insurance Corp. of*

---

1. First Nationwide was afforded the opportunity to file a brief on the jurisdictional question, but declined to do so.

2. The servicing of a home mortgage entails the administration of the cash flows incident to a home mortgage, such as property taxes, insurance premiums, and utility payments, as well as the mortgage payment itself. *See, e.g., Anchor Sav. Bank v. Zenith Mortgage Co.*, 634 F.2d 704, 705–06 (2d Cir.1980) (describing the duties of a mortgage servicer).

3. The pertinent portion of the statute is as follows:

 (a) **In general**
 A lender, in connection with a federally related mortgage loan, may not require the borrower or prospective borrower—
 ....
 (2) to deposit in any such escrow account in any month beginning with the first full installment payment under the mortgage a sum (for

the purpose of assuring payment of taxes, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period: *Provided, however,* That in the event the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency.
12 U.S.C. § 2609(a)(2).

*Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1256 (3d Cir.1977). Concerned that the Second Amended Complaint did not properly assert a basis to invoke the Court's jurisdiction, the Court granted the Lakes leave to file a Third Amended Complaint, *see* 28 U.S.C. § 1653 (allowing a party to amend a pleading to cure a jurisdictional defect), supported by a memorandum of law addressing the issue.

### A. Jurisdiction

■ In their Third Amended complaint, the Lakes allege federal question jurisdiction pursuant to 28 U.S.C. § 1331, claiming an implied right of action under § 10 of the RESPA, and also allege that "[u]pon information and belief, *Defendant* will assert jurisdiction by reason of the provisions of 28 U.S.C. § 1332." Third Amended Complaint ¶ 3 (emphasis added). Putting aside for the moment this rather curious attempt by plaintiffs to allege that the defendant will somehow claim and establish that diversity jurisdiction exists in this matter, the Court will analyze first whether or not the complaint properly alleges a cause of action "arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331.

■ At the outset, it is valuable to restate some basic principles of subject matter and federal question jurisdiction. Essential to the nature of an Article III court is its limited jurisdiction, as granted under the Constitution and the statutes of the United States, *see New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989); *Compagnie des Bauxites,* 456 U.S. at 701–02, 102 S.Ct. at 2103–05, with the presumption being that federal jurisdiction is absent unless a showing is made otherwise by the party seeking to press a claim, *see Kokkonen v. Guardian Life Ins. Co. of Am.,* — U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d

391 (1994). The Court is under a continuing obligation to examine its subject matter jurisdiction in a particular case, and must dismiss the case if it becomes apparent at any time that such jurisdiction is lacking. *See* Fed.R.Civ.P. 12(h)(3); *Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1049 (3d Cir.), *cert. denied sub nom. Upp v. Mellon Bank. N.A.,* — U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993); *TM Marketing, Inc. v. Art & Antiques Assocs., L.P.,* 803 F.Supp. 994, 997 (D.N.J.1992). To invoke the Court's federal question jurisdiction, it must appear from the face of the complaint that the cause of action is either created by federal law or that federal law is essential to a state-law cause of action. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–56, 77 L.Ed.2d 420 (1983); *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

The Lakes' purport to state a cause of action based on § 10 of the RESPA, thus invoking the Court's federal question jurisdiction. The difficulty with this claim is that § 10, on its face, does not create such a cause of action. In contrast, the RESPA contains a jurisdictional statute that explicitly establishes federal jurisdiction for causes of action based on violations of §§ 8 and 9 of RESPA, both of which contain explicit causes of action.[4] *See* 12 U.S.C. § 2607–08 & 2614. The Lakes acknowledge that § 10 does not explicitly provide a cause of action, but argue that one should be implied from the statute because, the Lakes claim, Congress intended to provide for a private cause of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 568–76, 99 S.Ct. 2479, 2485–89, 61 L.Ed.2d 82 (1979) (discussing the creation of implied rights of action); *see also* Erwin Chemerinsky, *Federal Jurisdiction* 321–22 (1989) (noting the Supreme Court's recent reticence to create additional private rights of action). In support of their position, they point to the Sixth Circuit's opinion in *Vega v. First Federal Savings & Loan Ass'n,* which held, albeit without much analysis or discus-

---

4. Section 8 prohibits kickbacks and unearned fees, and allows a person charged for the unauthorized disbursement to bring a cause of action for treble damages. *See* 12 U.S.C. § 2607(d).

Section 9 prohibits a seller of property from requiring that a particular title company be used, also providing for treble damages. *See id.* § 2608(b).

sion, that such a cause of action was implied in § 10, *see* 622 F.2d 918, 925 n. 8 (6th Cir.1980), and to Judge Richard Posner's dissent in *Allison v. Liberty Savings,* in which he also concluded that such a cause of action existed, *see* 695 F.2d 1086, 1091–93 (7th Cir.1982) (Posner, J., dissenting from denial of rehearing *en banc* ). This point, however, is by no means settled, and there is significant authority to the contrary. *See Allison,* 695 F.2d at 1090–91; *Bergkamp v. New York Guardian Mortgage Corp.,* 667 F.Supp. 719, 722–23 (D.Mont.1987); *Michels v. Resolution Trust Corp.,* Civ. No. 4–93–1167, 1994 WL 242162, at *3–*4 (D.Minn. Apr. 13, 1994).

 To examine the Court's subject matter jurisdiction, however, the Court need not resolve the question of whether Congress intended an implied right of action under § 10, for the determination of whether a complaint states a cause of action is distinct from the determination of the Court's jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1280–81 (3d Cir.1993); *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–10 (3d Cir.) (contrasting the standards governing 12(b)(1) and 12(b)(6) motions), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974). As the Third Circuit has instructed, "[a] district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute." *Growth Horizons,* 983 F.2d at 1281; *cf. Stibitz v. General Pub. Utils. Corp.,* 746 F.2d 993, 997 (3d Cir.1984) (holding that there is no federal question jurisdiction where a claim "is so insubstantial as to be completely devoid of merit"), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controver-

sy.'" *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir.1987) (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)).

In *Clark v. Gulf Oil Corp.,* 570 F.2d 1138 (3d Cir.1977), *cert. denied sub nom. Philadelphia Gas Works v. Gulf Oil Corp.,* 435 U.S. 970, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), the Third Circuit analyzed a case similar to the instant one. The *Clark* plaintiffs sought to bring a class action against Gulf Oil Corporation and Texas Eastern Transmission Corporation asserting, *inter alia,* an implied private cause of action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.* The district court found that there was no such cause of action and dismissed for failure to state a claim. *See Clark,* 570 F.2d at 1141. In affirming that decision, the Third Circuit first examined the district court's subject matter jurisdiction. Notwithstanding the eventual finding that the implied cause of action did not exist, a decision that was affirmed, the circuit court held that the district court did have jurisdiction to hear the case, since the implied cause of action pled by the plaintiff was predicated on a violation of federal law. *See id.* at 1143.

 In examining the Lakes' claim under this framework, it is clear that they have standing to bring this action, since they are within the "zone of interests" protected by § 10 and have suffered injury from First Nationwide's alleged conduct that can be redressed if the Court rules in their favor. *See Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 537–38 (3d Cir.1994) (discussing the standing requirement). The only open question is whether the alleged violation of § 10 is so frivolous so as to not "involve a federal controversy." Given that one circuit court of appeals has found that an implied private cause of action does exist under § 10, *see Vega,* 622 F.2d at 925 n. 8, and noting the absence of any guidance on this question by the Supreme Court or the Third Circuit, the Court concludes that the cause of action asserted by the Lakes is a non-frivolous cause of action sufficient to invoke this Court's federal question jurisdiction under 28 U.S.C.

§ 1331. *See Growth Horizons,* 983 F.2d at 1281; *Clark,* 570 F.2d at 1143.

■ This conclusion renders unnecessary the resolution of the Lakes' claim that questions of subject matter jurisdiction may be compromised by parties, and that a district court can approve a settlement without reaching the question of subject matter jurisdiction. The Court notes in passing that the case cited by the Lakes in support of this interesting proposition, *Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1168–69 (7th Cir.1980), *aff'd on other grounds sub nom. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1983), is readily distinguishable, since subject matter jurisdiction in *Air Line Stewards* was established at least as to 8% of the class members, the grounds upon which the Seventh Circuit attempted to distinguish the Fifth Circuit's opinion in *McArthur v. Southern Airways,* 569 F.2d 276, 277 (5th Cir.1978) (*en banc*) (reversing the district court's settlement approval for lack of subject matter jurisdiction), and the question of jurisdiction as to the remainder of the class was on appeal to the Supreme Court at the time of settlement. Neither factor is present here. The Court also notes that *Air Line Stewards* has never been relied upon by any other Court for the proposition now advanced by the plaintiffs.[5]

**B. Conditional Approval of the Class**

■ Having concluded that federal question jurisdiction exists, the Court can proceed to analyze the proposed conditional class approval for purposes of settlement.[6] Under Federal Rule of Civil Procedure 23(c)(1), the Court can make a conditional determination of whether an action should be

5. Though the Court concludes that federal question jurisdiction exists, it is compelled to address the Lakes' allegation of diversity jurisdiction, an allegation that the Court finds to be meritless. Beyond the fact that the Lakes have cited no authority allowing a plaintiff to allege that the *defendant* will assert diversity jurisdiction, the complaint fails to: 1) allege the citizenship of First Nationwide, 2) allege that the Lakes and First Nationwide are diverse parties, 3) allege the jurisdictional amount as to each member of the putative class, *see Zahn v. International Paper Co.,* 414 U.S. 291, 301, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973); *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 *passim* (1969), or even as to one member of the class, *see Packard v. Provident Nat'l Bank,* 994 F.2d 1039, 1045 n. 3 (3d Cir.) (noting the current debate over *Zahn's* validity in light of the supplemental jurisdiction statute, 28 U.S.C. § 1367, but not reaching the issue since no plaintiff had reached the jurisdictional amount), *cert. denied sub nom. Upp v. Mellon Bank. N.A.,* — U.S. —, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993), and 4) allege how much it will cost the defendant to comply with the injunctive relief requested by the Lakes. This last basis for jurisdiction came to light in the Lakes' supplemental memorandum on jurisdiction, which argues that the jurisdictional amount set forth in 28 U.S.C. § 1332 can be met by looking at how much it will cost the defendant to comply with the injunctive relief requested by the plaintiffs. *See* Pls.' Supp. Mem. at 10–12. Besides failing to allege in the complaint that the defendant's cost will be in excess of $50,000, the claim that the law is unsettled in this Circuit is incorrect. Whether a class action seeks primarily money damages, or whether it seeks injunctive relief, the courts of this Circuit have soundly

rejected the argument that the amount in controversy can be measured by the cost to the defendant. *See Packard,* 994 F.2d at 1050; *John B. Kelly, Inc. v. Lehigh Navigation Coal Co.,* 151 F.2d 743, 746–47 (3d Cir.1945), *cert. denied,* 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946); *Pierson v. Source Perrier, S.A.,* 848 F.Supp. 1186, 1189–90 (E.D.Pa.1994) ("To allow the amount in controversy to be measured by the cost to the defendant of complying with requested injunctive relief would be the same as allowing aggregation of the plaintiff's claims."); *Campbell Soup Co. v. Diehm,* 111 F.Supp. 211, 214 (E.D.Pa.1952). The case cited by the Lakes, *Trail v. Green,* 206 F.Supp. 896, 900 (D.N.J.1962), is inapposite, since there the requested relief was for money damages, and the defendant was statutorily barred from paying anything approaching the jurisdictional amount. Here, the Lakes argue that the *injunctive* relief would cause First Nationwide to spend more than $50,000, a claim that brings this case squarely within *Pierson* and *Lehigh Navigation.*

6. Though the Court has its doubts as to the viability of the cause of action stated by the complaint, this is of no concern in determining whether the class should be conditionally approved. "The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).

maintained as a class action, subject to final approval at a later date. *See, e.g., Lusardi v. Xerox Corp.,* 747 F.2d 174, 177 (3d Cir.1984). To be maintained as a class action, a plaintiff must establish the four prerequisites of numerosity, commonality, typicality, and adequacy of representation. *See* Fed.R.Civ.P. 23(a); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 246 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).[7] Furthermore, the claim must be maintainable under one or more of the three subsections of 23(b). *See In re Asbestos School Litig.,* 104 F.R.D. 422, 427 (E.D.Pa.1984), *amended by* 107 F.R.D. 215 (E.D.Pa.1985). The Lakes claim that section 23(b)(3)[8] is applicable to this lawsuit, since the question of law concerning the proper application of § 10 of RESPA is common to the entire proposed class.[9]

### 1. *Numerosity*

As proposed by the parties in the settlement agreement, the class is composed of all persons who have or have had mortgage loan escrows serviced by First Nationwide between January 4, 1983 and the date of the settlement, October 20, 1993 (the "applicable period"). This class is further divided into two subclasses, an "open" subclass, composed of mortgagees being serviced as of the date of the settlement agreement, and a "closed" subclass, composed of mortgagees not currently being serviced, but who were serviced at some during the applicable period. *See* Settlement Agreement ¶ 3. As represented by counsel for the Lakes at the hearing on February 1, 1994, the total class consists of over 100,000 members nationwide, with approximately 60% in the open subclass and 40% in the closed subclass.[10] *See* Tr. of 2/1/94 at 30. The practical difficulties in joining such a large number of litigants need not be itemized here. It suffices to say that the Court finds that the Lakes have met their burden to establish the number of members and the impracticability of joinder necessary to meet the numerosity prong.[11]

---

7. Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if
> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

8. Rule 23(b) provides, in pertinent part, as follows:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . . .
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficul-

ties likely to be encountered in the management of a class action.

9. Although First Nationwide does not oppose the proposed class action, having already reached agreement with Lakes as to the terms of settlement, it is incumbent upon the Court to conduct an independent evaluation of the proposed class action and to arrive at an independent determination of both the validity and desirability of the use of this procedural device. *See Ortiz v. Eichler,* 616 F.Supp. 1046, 1058 (D.Del.), *on reargument,* 616 F.Supp. 1066 (D.Del.1985), *aff'd,* 794 F.2d 889 (3rd Cir.1986).

10. It is of no moment that the parties are as of yet unable to determine the precise number of members in each subclass. *See Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989); *In re Three Mile Island Litig.,* 95 F.R.D. 164, 165 (M.D.Pa.1982).

11. The burden of establishing the elements of Rule 23 is generally on the plaintiff. *See Davis v. Romney,* 490 F.2d 1360, 1366 (3d Cir.1974); *Freedman v. Arista Records, Inc.,* 137 F.R.D. 225, 227 (E.D.Pa.1991); *Gavron v. Blinder Robinson & Co.,* 115 F.R.D. 318, 321 (E.D.Pa.1987). *But see Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 136 (W.D.Pa.1993) ("The burden is on the defendants to prove that the representation will be inadequate.") (citing *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982)).

*Cf. Manning v. Princeton Consumer Discount Co.,* 533 F.2d 102, 104 (3d Cir.) (affirming determination that numerosity was not shown where plaintiff failed to show conduct complained of was industry-wide), *cert. denied,* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976).

### 2. *Commonality*

■ "Rule 23(a)(2) does not require that all issues in the litigation be common, only that common questions exist. Indeed, a single common question is sufficient. . . ." *In re Asbestos School Litig.,* 104 F.R.D. at 429 (citations omitted); *see Weiss v. York Hosp.,* 745 F.2d 786, 809 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). As described by the Lakes, First Nationwide services or has serviced the class members' escrow accounts using a single methodology, regardless of the mortgage's location or origination. The resolution of all of the class member's claims is hinged upon a determination of how First Nationwide services the escrow accounts, and whether the method they use is in compliance with RESPA and the mortgages themselves. *See* Tr. at 31. Though the specific mortgage terms may differ from member to member, the methodology applied by First Nationwide to each account is the same. Based on these representations, the Lakes have successfully established commonality.

### 3. *Typicality*

■ The third prerequisite is that the claims of the would-be representative plaintiffs be typical of those of the members of the class. Though the exact meaning of the requirement defies ready explanation, *see generally Weiss,* 745 F.2d at 809–10 & n. 36 (noting the "elusive" nature of the typicality requirement), the Court is satisfied that plaintiff's claim is typical of those of the other members of the class. There would appear to be no unique defenses applicable to the Lakes' claim, *see, e.g., Kas v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461–62 (D.D.C.1984) (finding no typicality where defendant had a defense peculiar to the putative representative plaintiff), nor would there appear to be any antagonism

between the Lakes' position and that of the other class members, *see Sley v. Jamaica Water & Utils., Inc.,* 77 F.R.D. 391, 394 (E.D.Pa.1977) ("The typicality requirement functions as a safeguard against interclass conflicts and an assurance that the plaintiff's interests are more or less co-extensive with those of the class."). The only point of possible conflict is with the members of the closed class, since they would presumably have no interest in the injunctive relief the Lakes seek. However, since the Lakes also seek refunds of prior excessive overages, which is the relief the closed class would be entitled to seek, i.e., compensation for the lost use of funds, the Court finds that the claims are sufficiently typical to allow the Lakes to represent the proposed class.

### 4. *Adequacy of Representation*

■ The Third Circuit Court of Appeals has described the appraisal of the adequacy of representation as follows:

> The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, [2] that he or she has obtained adequate counsel, and [3] that there is no conflict between the individual's claims and those asserted on behalf of the class.

*Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982)). The Court has no reason to doubt that the Lakes are able and willing to press both their claims and those of their fellow class members, nor is there any indication that the interests of the Lakes conflict with those of the class. *See Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 128–29 (3d Cir.1987) (noting that the absence of conflict and a vigorous prosecution are the "two principal factors in determining the adequacy of representation"), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 860 (1988). In regards to the Lake's counsel, the Court finds that they are "qualified, experienced, and generally able to conduct the proposed

litigation," and appear to have no "interests antagonistic to those of the class." *Wetzel,* 508 F.2d at 247. Counsel for the plaintiffs represented to the Court at the February hearing that it had been involved in at least ten other class actions of this particular type, i.e., mortgagees seeking damages for overages in their escrow accounts, and that the judges presiding over those cases have found them to be adequate class counsel. *See* Tr. at 34–35. The Court also notes that nothing in the submissions and arguments by counsel, notwithstanding the argument concerning the parties' ability to compromise subject matter jurisdiction, suggests that counsel would not be able to represent the class adequately. Therefore, the Court finds that the Lakes are adequate representatives of the proposed class.

### 5. *Rule 23(b)(3)*

 The proposed class may be maintained if: 1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and 2) the class action form "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). To determine predominance, the Court must identify the "legal and factual issues, common and diverse, and [identify] the class members to which those relate." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.) (*in banc*), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *see also* 7A Charles A. Wright et al., *Federal Practice and Procedure: Civil* § 1778, at 528 (2d ed. 1986) ("When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis."). The analysis of the predomination prong necessarily overlaps with the already discussed issue of commonality, since the predominating issue must be one that is common to the class. The issue of First Nationwide's compliance with RESPA, and, more particularly, the methodology used to service the escrow accounts, is common to all the class members. This determination predominates over any differences that may exist due to differing mortgage agreements or the different state laws applicable to class members, since these would only impact the *amount* of any overage, and thus damages, not whether the method used by First Nationwide is permissible in the first instance. *See* Tr. at 36–38; *In re School Asbestos Litig.,* 789 F.2d 996, 1010 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School Dist.,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986), *and National Gypsum Co. v. School Dist.,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986); *see also Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 176 (E.D.Pa.1979) (noting that "the 'overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate") (quoting 5 *Newberg on Class Actions* § 8824(b), at 879 (1977)); 7A Wright et al., § 1778, at 529–33 (noting that different individual damage awards should not preclude class determination of statutory liability). The Court concludes that the predominance requirement of 23(b)(3) has been met.

 "The superiority finding requires at a minimum (1) an informed consideration of alternative available methods of adjudication of each issue, (2) a comparison of the fairness to all whose interests may be involved between such alternative methods and a class action, and (3) a comparison of the efficiency of adjudication of each method." *Katz,* 496 F.2d at 757. The interests that should be taken into account include those of the judicial system, the putative class, the instant plaintiffs and defendant and their attorneys, and the general public. *See id.* at 760. Furthermore, the four "fairness and efficiency criteria" in 23(b)(3) should be considered in making the evaluation.[12] *See Bo-*

---

12. That is,

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the contro- versy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the

*gosian v. Gulf Oil Corp.,* 561 F.2d 434, 448 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

 The Court has little difficulty in finding that the class action form is the superior method of resolving the claim that the Lakes seek to prosecute. The alternative to pursuing a class action is a series of state court actions by a large number of scattered plaintiffs, an inefficient allocation of judicial and public resources. Upon the representations of counsel, the actual amount due to each class member is small, amounting to no more than a few hundred dollars per member. Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, "typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated." 7B Wright et al., § 1778, at 59; *see, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985) ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form. Additionally, there is no indication that other litigation is pending, that there is any strong interest on the part of individual class members to control the proposed litigation interpose, or that concentrating the litigation in this form is in the least undesirable. To the extent that individual class members may raise any of these issues, the Court can review its determination once the final hearing is held. And though the class is large, it would appear to be manageable, given counsel's representation that direct mailings both of notice and of possible settlements can be made to the open class members, and that the closed class members can be notified through publication. *Cf. City of Philadelphia v. American Oil Co.,* 53 F.R.D. 45, 73–74 (D.N.J.1971) (rejecting as unmanageable a class composed of six million purchasers of oil products); *United Egg Producers v. Bauer Int'l Corp.,* 312 F.Supp. 319, 321 (S.D.N.Y.1970) (rejecting "class comprising all consumers of eggs in the United States" on similar grounds). Given the difficulties inherent in individual resolution of the claims the Lakes seek to prosecute on behalf of the proposed class, the Court finds that the class action form presents the superior method of resolving the instant litigation.

The Court will therefore approve the proposed class as previously defined for purposes of settlement. The Court will now turn to the proposed settlement.

C. Preliminary Approval of the Class Settlement

 The Lakes and First Nationwide have proposed a settlement of this action and have submitted it for the Court's preliminary approval. *See* Fed.R.Civ.P. 23(e). The standards for approval of a class action are well-settled. The Court will examine the proposed settlement to determine if it is fair, adequate, and reasonable. *See Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118 (3d Cir.1990); *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1983). In making this determination, the Court must be guided by the factors set forth in the leading case of *Girsh v. Jepson:*

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir.1975). "The settlement must be both substantively reasonable compared to the likely rewards of litigation and the result of good faith, arms length negotiations." *Fisher Bros. v. Cambridge–Lee Indus., Inc.,* 630 F.Supp. 482, 487 (E.D.Pa.1985).

 The parties propose to settle the action as follows. First Nationwide will modify the method it uses to calculate required escrow payments to a method that the Lakes believes complies with § 10 of RESPA. In addition, there will be a one-time rebate to the open class members, the amount to be determined by a statistical analysis of randomly selected loans during the years 1990 through 1992 and credited directly to their escrow accounts, and to closed class members, who will be paid directly upon making an application. The closed class members will receive no more than $10,000 total, and the rebate to the entire class will not exceed $166,771. First Nationwide has also agreed to pay up to $110,000 in counsel fees to class counsel, with the final amount to be determined by the court,[13] and to provide a payment of $2,000 to the Lakes themselves.[14] The class, in turn, would release First Nationwide from any further liability in relation to claims arising from the company's mortgage escrow practices.

The Court finds, at least preliminarily, that the settlement proposed is fair, adequate, and reasonable. The key factor in this decision is the questionable status of the cause of action the Lakes seek to pursue. Section 10 of RESPA does not include a private remedy, and there is no indication that Congress intended there be one:

Where a statute does not explicitly create a right of action for a particular party, a court may find such a right implied only where it can confidently conclude Congress so intended. Otherwise, "implication of private rights of action may alter the remedial scheme devised by Congress for the enforcement of statutory programs and ... place the judiciary in the role of enunciating or modifying policy decisions properly the preserve of the legislature."

*New Jersey Dep't of Envtl. Protection & Energy v. Long Island Power Auth.,* 30 F.3d 403, 421 (3d Cir.1994) (internal quotation marks omitted) (quoting *American Tel. & Tel. Co. v. M/V Cape Fear,* 967 F.2d 864, 866 (3d Cir.1992)). Where the Court to reach this issue, it would probably agree with the well-reasoned opinion of the Seventh Circuit in *Allison v. Liberty Savings,* 695 F.2d at 1090–91, which found the necessary Congressional intent lacking. This very weakness, however, gives greater force to the argument in favor of settlement. The proposed settlement will insure that First Nationwide will comply with § 10 in the future, as well as provide some relief to the class members for

---

**13.** The per se ban on simultaneous negotiation of settlement terms and attorney's fees pronounced in *Prandini v. National Tea Co.,* 557 F.2d 1015, 1020–21 (3d Cir.1977), has been overruled by the Supreme Court in *Evans v. Jeff D.,* 475 U.S. 717, 738 n. 30, 106 S.Ct. 1531, 1543 n. 30, 89 L.Ed.2d 747 (1986), at least as to statutory fee actions under 42 U.S.C. § 1988. *See Ashley v. Atlantic Richfield Co.,* 794 F.2d 128, 137–38 & n. 16 (3d Cir.1986) (recognizing *Prandini*'s overruling). Applying either the letter or the spirit of *Prandini* to the instant case, the Court finds that there was no violation, given the fair resolution of the case and the discretion vested to the court to set the actual fee to be paid. *See Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 522 (1st Cir.1991).

This determination, however, has no bearing on the as of yet undecided issue of what attorney's fees would be appropriate in this case. Such a determination will be made upon a proper fee petition by class counsel.

**14.** Though the Court will preliminarily approve the settlement proffered by the parties, it views the proposed payment to the Lakes with a good deal of skepticism, and the parties will need to make a stronger showing at the final hearing if they expect the Court's approval of this bounty. *See In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 571–72 (7th Cir.1992); *In re U.S. Bioscience Sec. Litig.,* 155 F.R.D. 116, 121 (E.D.Pa.1994).

damages incurred.[15] Therefore, in view of the weakness of the plaintiffs' claim, and giving due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith, the Court finds that the proposed settlement is fair, adequate, and reasonable.

### D. Notice to the Class

■■■■ The final issue the Court must take up is the question of notice to the class of the conditional approval of the class, *see* Fed.R.Civ.P. 23(c)(2),[16] and of the preliminary approval of the settlement, *see id.* 23(e). Notice to the class members is essential to providing each member with due process of law, since members will be bound to the resolution of this case unless they opt out. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); 7B Wright et al., § 1786. Since the settlement has been tentatively approved, notice of the certification and the proposed settlement can be combined. *See Manual for Complex Litigation* § 30.212, at 226 (2d ed. 1985). Where the addresses of putative class members are known, or can be discovered through reasonable efforts, individual notices must be sent to each member. *See* Fed.R.Civ.P. 23(c)(2); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974); *Mullane,* 339 U.S. at 318–19, 70 S.Ct. at 659–60. Otherwise, "notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *Carlough v. Amchem Prods., Inc.,* Civ. A. No. 93–215, 1993 WL 472812, at *7 (E.D.Pa. Oct. 28, 1993) (citing *Mullane,* 339 U.S. at 317–18, 70 S.Ct. at 658–59). The absence of receipt by some class

members of notice is not fatal to a notice plan—actual notice to everyone is not a prerequisite. *See Mullane,* 339 U.S. at 313–19, 70 S.Ct. at 656–60; *Manual for Complex Litigation* § 30.211, at 223.

■■■ In this case, the parties propose third-class mail to all open class members for whom defendant has address information, and publication two times in the national edition of USA TODAY as to all others. The parties represented at the February hearing that address information on closed class members before 1989 was simply not available, due to lack of computer records and the variety of sources from which First Nationwide acquired mortgages for service. *See* Tr. at 50. The Court accepts this representation and agrees that the publication proposed is sufficient notice to those class members whose addresses are not on file. The notice plan is reasonable under the circumstances and the Court will approve it.

## II. CONCLUSION

The Court concludes that it has subject matter jurisdiction over the instant case, that the class proposed by the Lakes shall be conditionally certified for purposes of settlement, that the settlement proposed by the parties shall be preliminarily approved, and that notice shall issue to the class members pursuant to the notice plan that has been proffered by the parties. The difficulty in individual litigation of the claims advanced by the Lakes, and the legal weaknesses in their case, i.e., the uncertainty of an implied cause of action in § 10 of RESPA, support the settlement of this case in class action form.

An appropriate order shall be entered.

---

**15.** Though the amount agreed to be disbursed by First Nationwide would appear to be small relative to the potential size of the class ($166,771 v. over 100,000 class members), the disparity is not as great as it may appear at first glance. The actual damage suffered by a class member is the interest he or she would have earned on the overage in their account for the period the overage existed. Since the overage amounts in each case were relatively small, the interest that would have accrued is correspondingly diminutive. Counsel in fact estimated that the typical rebate would be no more than a few dollars. *See* Tr. at 52.

**16.** Rule 23(c)(2) provides that:

In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each members that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

## ORDER

AND NOW, this 29th day of July, 1994, upon consideration of the plaintiffs' Motion for Preliminary Approval of Class Settlement and Notice of Class (Doc. No. 16), after a hearing on February 1, 1994, and based upon the reasoning contained in the accompanying Memorandum, it is hereby **ORDERED** that the motion is **GRANTED** as follows:

1. This action shall be maintained, for settlement purposes, as a class action pursuant to Federal Rule of Civil Procedure 23, with a class as defined in Recital 3 of the Settlement Agreement of October 20, 1993, and with Michael and Erna Lake as the class representatives. The Court appoints Charles Zimmerman and Barry Reed and their firm as class counsel;

2. The certification of the class is conditioned on approval of the settlement, and in the event the settlement is not approved, the certification shall be vacated;

3. The Court finds that the Settlement Agreement of October 20, 1993, appears, upon preliminary review, to be fair, adequate, and reasonable, and shall be submitted to the class members for their consideration and for a hearing to determine whether the settlement will be approved by the Court;

4. A hearing shall be held on **Tuesday, November 29, 1994,** at **4:00 P.M.,** in Courtroom 3–A, United States Courthouse, 601 Market St., Philadelphia, PA, to consider whether the Court should give final approval to the settlement;

 a. Objections to the settlement by class members will be considered by the Court if received by class counsel on or before **45** days after the mailing of the notice provided for in this Order. Class counsel shall serve the defendant and file with the Court copies of all such objections before **November 15, 1994;**

 b. At the hearing, class members may be heard orally in support of or in opposition to the settlement, provided that such persons file with the Clerk of Court, and serve on counsel of record for the parties to the proposed settlement, on or before **November 15, 1994,** notification of the desire to appear personally, and a statement of their position and reasons for it;

 c. Class counsel and defendant's counsel should be prepared at the hearing to respond to any objections filed by the class members and to provide other information, as appropriate, bearing on whether or not the settlement should be approved;

5. Class counsel are directed to give notice of the hearing and the proposed settlement to the class members in the following manner:

 a. As to open loan class members (as defined in Recital 3(a) of the Settlement Agreement), by mailing, not later than **August 31, 1994,** a copy of the notice (in substantially the form filed of record) in the name of the Clerk of Court by third-class mail, postage prepaid, to all open loan class members for whom the defendant has address information;

 b. As to closed loan class members (as defined in Recital 3(b) of the Settlement Agreement), by causing the summary notice (in substantially the form filed of record) to be published in the national edition of the *USA Today* newspaper in accordance with ¶ 19 of the Settlement Agreement;

 Pursuant to the terms of the Settlement Agreement, defendant shall defray the costs of printing, mailing, and publishing the notice; and

6. Class members may exclude themselves from the class by serving on class counsel written notice, postmarked on or before **October 28, 1994,** that they request exclusion from the class. Class counsel shall promptly hand-deliver to defendant a list of the persons who have so excluded themselves and shall file a copy of same with the Court.

AND IT IS SO ORDERED.