**Lupina RAINEY, Plaintiff,**

v.

**PHILADELPHIA HOUSING AUTHORITY, Elton Jolly, and Charles Trulear, Defendants.**

**Civ. A. No. 92–6815.**

United States District Court,
E.D. Pennsylvania.

Sept. 8, 1993.

Peter D. Schneider, Community Legal Services, Inc., Philadelphia, PA, for plaintiff.

Michael Pileggi, Philadelphia Housing Authority, Philadelphia, PA, for defendants.

### MEMORANDUM ORDER

ROBRENO, District Judge.

**AND NOW,** to wit, this 8th day of **September 1993,** upon consideration of plaintiff's motion to determine attorney's fees and costs and defendants' answer thereto, it is **ORDERED** that plaintiff's motion is **GRANTED** and that defendants shall pay plaintiff the sum of $5,372.76 in attorney's fees and costs within 30 days from the date of this Order, based upon the following reasoning:

1. Plaintiff brought this case against the Philadelphia Housing Authority (the "PHA") and two of its employees [1] for damages she sustained as a result of defendants' actions in evicting her from her public housing residence. Plaintiff sought declaratory and injunctive relief (including an order reinstating her to public housing) and compensatory and punitive damages under 42 U.S.C. § 1983; treble damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–9.2 (1993) [hereinafter the Unfair Trade Practices Law]; and reasonable attorney's fees.

2. Prior to trial, plaintiff dropped her request to be rehoused in PHA property. After a bench trial lasting two half-days, the Court entered judgment in favor of plaintiff, awarding her $1,000 for lost or destroyed furniture, $872 representing the difference between the amount of rent plaintiff paid in private housing and the rent plaintiff was paying at PHA housing from the time of her eviction to the date of judgment, and $1,200 for humiliation, distress, and embarrassment caused by the PHA's conduct during the eviction. *See Transcript of Op.* at 2–5 (June 8, 1993). The Court denied the request for punitive damages and for relief under the Unfair Trade Practices Law. *See id.* at 5.[2]

---

1. Although Elton Jolly, the PHA's special master, and Charles Trulear, the PHA manager at plaintiff's housing development, were named as defendants as well as the PHA, their defenses were identical and they were all represented by the same counsel who filed identical pleadings on behalf of all three defendants.

2. The facts underlying the litigation are as follows:

Plaintiff was a tenant in the Norris Apartments, a public housing complex managed by the PHA. The PHA obtained a judgment by default against plaintiff from the Philadelphia Municipal Court, alleging that plaintiff had failed to make timely rent payments and for breaches of certain nonmonetary covenants under her lease. The PHA then obtained and executed a writ of possession, evicting plaintiff from her apartment.

In the instant case, plaintiff alleged she had not been provided notice of the nonmonetary breaches of the lease in the original landlord-tenant complaint, that the municipal court had allowed the PHA to amend its complaint on the date of the hearing without notice and without plaintiff being present, and that she was not in arrears in her rent at the time of the writ's execution. Prior to trial, the PHA withdrew its initial claim that it had evicted plaintiff on the basis of the nonmonetary default and proceeded instead on the alternative theory that plaintiff had not fully satisfied the monetary judgment prior to the eviction.

Under Pennsylvania law, satisfaction of a judgment for failure to pay rent entitles a tenant to avoid eviction. *See* 68 P.S.. § 250.504 (1965) (repealed 1978); 42 Pa.Stat.Ann. § 20003(b) (1993) (providing that 68 P.S. § 250.504 remains in force as Pennsylvania common law). Commonly known as "pay and stay," this provision allows a tenant to void a writ of possession issued pursuant to a judgment obtained as a result of a monetary default by paying the rent in arrears prior to execution of the writ. The Court found that plaintiff had made payment in full to PHA of the "rent actually in arrears" prior to the execution of the writ. *See* Pa.R.C.P.D.J. No. 518. note & explanatory cmt. Therefore, the Court concluded that plaintiff had been wrongfully

3. Plaintiff's counsel, Mr. Peter D. Schneider, has filed a fee petition seeking $19,710.15 as reasonable compensation for attorney's fees and costs in obtaining a recovery of $3,072.00 for plaintiff in this § 1983 action. *See Pl.'s Mot. to Determine Attorney's Fees* at 1–2.

4. Section 1988 of 42 U.S.C. provides for the award of reasonable attorney's fees to a party who has prevailed upon an action brought under 42 U.S.C. § 1983 for violation of federally protected civil rights. Although defendants do not contest that plaintiff was the prevailing party in this case, *see Defs.' Mem. in Opp'n to Pl.'s Mot. to Determine Attorney's Fees* at 3 (stating that "there is no objection on the part of the defendants that plaintiff is a prevailing party") [hereinafter *Defs.' Mem. in Opp'n*], they challenge the reasonableness of the fees claimed by plaintiff's counsel on two grounds: (1) plaintiff's counsel's request for an hourly rate of $175.00 is too high in light of counsel's experience, and (2) the time spent by plaintiff's counsel was excessive.

5. The starting point for determining a reasonable fee under § 1988 is calculation of the "lodestar." *See Blanchard v. Bergeron,* 489 U.S. 87, 94–95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989).[3] The lodestar is obtained by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See id.*

6. The hourly rate used in calculating the lodestar should be " 'the market rate[ ] in the relevant community.' " *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 422 (3d Cir.1993) (quoting *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). The "burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. "[T]he party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3d Cir.1989)).

7. In this case, plaintiff's counsel requests a fee of $175.00 per hour. *See Decl. of Peter D. Schneider* at 2. Defendants claim that while plaintiff's counsel may have had vast experience in "housing issues," he has "only limited experience with due process [issues]," *Defs.' Mem. in Opp'n* at 5, the issue upon which plaintiff ultimately prevailed.

8. The Court notes that plaintiff's counsel is employed by Community Legal Services, Philadelphia, Pennsylvania ("CLS"), that he has nine years of litigation experience in the federal courts, and that under the fee schedule developed by CLS, plaintiff's counsel has been assigned a billing rate of $175.00 per hour. The CLS schedule has been approvingly cited by the Third Circuit as being well developed and has been found by this Court to be a "fair reflection of the prevailing market rates in Philadelphia." *Swaayze v. Philadelphia Housing Auth.,* No. CIV 91–2982, 1992 WL 81598, at *2 (E.D.Pa. Apr. 16, 1992). Therefore, the Court finds that the rate of $175.00 "fall[s] within the purview of the prevailing rates charged in this community for similar work performed by attorneys of comparable skill, experience, and reputation." *Liquid Glass Enters., Inc. v. Liquid Glass Prods. Int'l, Inc.,* No. CIV 89–6324, 1993 WL 315644, at *6 (E.D.Pa. Aug. 16, 1993) (citing *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11); *see, e.g., Patriot Party of Pennsylvania v. Mitchell,* No. CIV 93–2257, 1993 WL 313667, at *3 (E.D.Pa. Aug. 16, 1993) (civil rights attorney awarded $175.00 as a reasonable hourly rate), *appeal filed,* No. 93–1832 (3d Cir. Aug. 26, 1993).

9. Once the Court determines the hourly rate, it must determine the number of hours

---

evicted. *See Transcript of Op.* at 2–4 (June 8, 1993).

3. As discussed *infra* ¶ 13, the lodestar is subject to further adjustment in the Court's discretion. *See Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

to be used in the lodestar calculation. "At this stage, however, the court may not *sua sponte* reduce the number of billed hours." *Patriot Party*, 1993 WL 313667, at *3 (citing *McDonald v. McCarthy*, 966 F.2d 112, 119 (3d Cir.1992)). In a statutory fee case, the Court may reduce the number of hours prong of the lodestar only "if the adverse party has ... 'raise[d] a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure.'" *Bell*, 884 F.2d at 719 (quoting *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir.1985)).

■■■■ 10. Defendants have objected specifically to certain time entries as being excessive. *See Defs.' Mem. in Opp'n* at 6–7. The court has wide discretion to reduce fees in light of objections. *See Bell*, 884 F.2d at 721. The level of skill and experience claimed by counsel not only informs the Court's judgment as to the appropriate hourly fee but also helps establish how much time counsel reasonably should have spent in performing a particular task. To put it another way, normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task. The Court agrees that based upon plaintiff's counsel's level of skill and experience, which commands a rate of $175 per hour, some of the time spent by counsel was clearly excessive and should be reduced as follows:

a. Page 1, lines 4–9,[4] 5.35 hours for drafting the complaint. The Court will reduce the time to 2.0 hours.

b. Page 2, line 13 and Page 3, line 1, 4.16 hours for attendance at bankruptcy hearing

on a matter plaintiff's counsel believed was related to the instant case. That the matter ultimately turned out to be unrelated only became clear at the conclusion of the instant matter. The Court will not second guess the professional judgment of counsel based on the benefit of hindsight. No reduction will be made to this request.

c. Page 3, lines 2–14 and Page 4, lines 1–3, 31 hours for drafting motion for summary judgment. The Court will reduce the time to 15 hours.

d. Page 4, lines 5–6, 9.92 hours for drafting memorandum in opposition to motion to compel. The Court will reduce the time to 3 hours.

e. Page 4, lines 7, 9–11, and 13, 9.0 hours for drafting memorandum in opposition to defendants' summary judgment motion. The Court will reduce the time to 4.5 hours.

f. Page 5, lines 8–11, 14 and 15, 4.5 hours for preparing memorandum of law in opposition to motion to amend. The Court will reduce the time to 2.25 hours.

g. Page 7, line 10, 2.25 hours for the second trial date. The Court will disallow the time on the basis that the second trial date was necessitated by plaintiff's own unavailability on the first trial date.

11. Plaintiff's counsel claims $106.00 in costs and $2,527.65 for the time spent by Ms. Virginia Lesso, a paralegal, and Ms. Paula D. Smith, a law student intern. *See Decl. of Peter D. Schneider* at 3. Defendants have not objected to these requests.[5]

12. Accordingly, plaintiff's counsel's application will be reduced as follows:

---

4. All references to pages and lines are to the fee petition attached to plaintiff's counsel's declaration. *See Decl. of Peter D. Schneider* ex. B.

5. The rate for the work done by Ms. Smith, the law student intern, is the subject of conflicting affidavits, with Ms. Smith's affidavit listing a fee of $75.00 per hour, *see Decl. of Paula D. Smith* at 2, and the affidavits of plaintiff's counsel and of CLS's General Counsel listing a fee of $80.00 per

hour, *see Decl. of Peter D. Schneider* at 3; *Decl. of Jonathan M. Stein* at 3, ex. D. Given the defendants' failure to object to this rate, and the declarations made by Ms. Smith's supervisors, who are in a better position to explicate CLS's billing rates than she, the Court will allow an hourly rate of $80.00 for Ms. Smith's work. The defendants have not object to the hourly rate of $85.00 per hour charged by Ms. Lesso and thus it will be allowed.

| | Hourly rate | Number of hours requested | Reduced hours [6] | Total |
|---|---|---|---|---|
| Peter D. Schneider | $175.00 | 97.58 | 62.31 | $10,904.25 |
| Virginia Lesso | 85.00 | 4.09 | 4.09 | 347.65 |
| Paula D. Smith | 80.00 | 27.25 | 27.25 | 2,180.00 |
| | | | | $13,431.90 |

13. Having determined that plaintiff is a prevailing party and having calculated both prongs of the lodestar, the Court may, on its own, modify the lodestar amount based on its " 'assessment of what ... a reasonable fee [is] under the circumstances of the case.' " *Farrar v. Hobby,* —— U.S. —— ——, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992) (quoting *Blanchard,* 489 U.S. at 96, 109 S.Ct. at 946). The most telling factor in making such an assessment is "the degree of success obtained" by the party seeking compensation. *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Where a party has achieved only partial or limited success, the lodestar amount may be excessive and may be reduced by the court. *See id.*

14. The Supreme Court has instructed that in cases where a plaintiff is pursuing multiple theories of recovery the district courts should disallow fees for time spent by counsel on claims which were either unsuccessful or unrelated to the successful claims. *See id.* at 434–35, 103 S.Ct. at 1940 (no fees may be recovered based on work performed on unsuccessful claims which were based on distinctively different facts and legal theories from those claims on which plaintiff prevailed). However, where claims are factually or legally related, it is difficult to determine which portion of the time spent by counsel bears upon which claim. *See, e.g., Peters v. Delaware River Port Auth.,* No. CIV 91–6814, slip op. at 7 (E.D.Pa. August 13, 1993) (allowing attorney's fees for time spent in unemployment compensation matters related to first amendment claims in a § 1983 case), *appeal filed,* No. 93–1278 (3d Cir. Mar. 29, 1993) (appealing the underlying liability verdict). Also, where counsel has raised alternative legal theories from the same core of facts, the court's ultimate rejection of one of the legal theories does not mandate a reduction of the fee. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. The Court finds that the claims asserted by plaintiff in this case were sufficiently legally and factually related that it would be impossible to unscramble them post facto. Therefore, although plaintiff prevailed on only one of her multiple theories, i.e., wrongful eviction, the Court will not reduce counsel's fee request for that reason alone.

15. There is no question that in a legal sense, however, plaintiff achieved only partial or limited success. To put it plainly, plaintiff's ambitious constitutional grasp fell victim of her inadequate factual reach. The Court did not order plaintiff reinstated to her public housing unit (the initial request having been withdrawn by plaintiff prior to the trial), did not award treble damages under the Unfair Trade Practices Law, and did not award punitive damages as initially requested by plaintiff. In a larger sense, the case did not cause the enjoinment of an unlawful practice by a public agency or otherwise implicate public policy objectives. Only compensatory damages in the relatively modest amount of $3,072 were awarded to plaintiff.[7]

16. In the most fundamental way, and by reference to the private-practice analog, no paying client could possibly consider it a victory to be charged almost $20,000 for a $3,072 recovery. Though the analogy to the private-sector practice of law is admittedly not perfect, and the vindication of public policy objectives will warrant under certain circumstances the award of counsel fees in an amount disproportionate to the actual mone-

---

6. The reduction in Mr. Schneider's hours is computed as follows: Item (a) 3.35, Item (b) 0.00, Item (c) 16.00, Item (d) 6.92, Item (e) 4.50, Item (f) 2.25, and Item (g) 2.25, for a total of 35.27 hours. *See supra* ¶ 10.

7. The damages awarded did not significantly differ from the PHA's offer, made prior to the trial, to settle the case for $2,000 plus $500 in counsel fees. The primary difference between the settlement offer and the trial's result is the substantial variance between counsel fees offered and counsel fees requested.

132

tary recovery obtained, in a case such as this, devoid of factual or legal complexity, taking less than two half-days of trial, the results of which neither affected public policy issues nor benefitted anyone other than the plaintiff, and where plaintiff's own success was limited, it is not "reasonable," *Farrar,* —— U.S. at ——, 113 S.Ct. at 575, for counsel to be awarded a lodestar more than four times the size of his client's actual recovery. Accordingly, the Court will reduce the lodestar of $13,431.90 by 60% and award counsel $5,372.76 as compensation.

AND IT IS SO ORDERED.