**Michael and Erna LAKE, and All Others Similarly Situated, Plaintiffs,**

v.

**FIRST NATIONWIDE BANK, Defendant.**

**Civ. A. No. 93–21.**

United States District Court,
E.D. Pennsylvania.

Sept. 14, 1995.

Jeffry B. Herman, Cary L. Flitter, Lundy, Flitter & Beldecos, P.C., Narberth, PA, Charles S. Zimmerman, Barry G. Reed, Zimmerman, Reed, Minneapolis, MN, for plaintiffs.

Arthur Newbold, M. Frances Ryan, Dechert, Price & Rhoads, Philadelphia, PA, Alan N. Salpeter, Jeffrey M. Strauss, Mayer, Brown & Platt, Chicago, IL, for defendant.

Garry W. Walden, Miami, FL, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiffs Michael and Erna Lake have filed this motion seeking the Court's approval of the settlement in this class action, final certification of the class, attorneys' fees, and class representative fees. Having preliminarily approved the certification of the class and the settlement, the Court is now called upon to issue final findings. For the reasons set forth below, the motion shall be granted.

## I. BACKGROUND

Plaintiffs Michael and Erna Lake brought this action on behalf of current and former customers of First Nationwide Bank ("First Nationwide" or "Bank"), a holder and servicer of residential mortgages. As part of its mortgage service agreement with homeowners, First Nationwide required its customers to deposit funds into an escrow account to pay for insurance premiums, property taxes, and other items as they became due. Plaintiffs contend that the amount required in the escrow accounts by First Nationwide has led to surpluses being carried in excess of the amount required by law and by First Nationwide's mortgage agreements, in violation of the standards set forth in § 10 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.A. § 2609(2) (West 1989).[1] Additionally, plaintiffs assert state law claims for breach of contract, misrepresentation, breach of fiduciary duty, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa.Stat. Ann. tit. 73, §§ 201–1—201–9.2 (1993).

The plaintiffs moved the Court to certify conditionally a class consisting of customers of First Nationwide who presently or formerly had their mortgages serviced by the Bank, and also asked the Court to grant preliminary approval to a class-wide settlement. As part of its obligations under the negotiated settlement, First Nationwide agreed to alter its method of operation so that a reduced surplus will be held in customer escrow accounts in the future. Moreover, First Nationwide agreed to refund to the class all funds that it currently holds in excess of the amount required by the settlement.[2]

In addition, the settlement shall afford the plaintiffs retrospective relief in the form of a one-time monetary award meant to compensate the class for the lost use of their money. Class members who have a mortgage currently being serviced by First Nationwide will share an interest award totalling $156,771. Meanwhile, class members who held or are holding mortgages formerly serviced by First Nationwide will also share an interest award not exceeding $10,000.[3] In return for the refund, the interest award, and First Nationwide's agreement to change its future escrow requirements, the class agreed to release all claims against the Bank pertaining to its mortgage practices and procedures. The parties further agreed that attorneys' fees in an amount not exceeding $110,000 are to be awarded to plaintiffs' counsel, and that a $2,000 payment shall be made to Michael

---

1. Section 10 of RESPA provides that a lender may not require a borrower

 to deposit in any such escrow account in any month beginning with the first full installment payment under the mortgage a sum (for the purpose of assuring a payment of taxes, insurance premiums and other charges with respect to the property) in excess of the sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months ... plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve month period: *Provided, however,*

 That in the event the lender determines that there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency.

 12 U.S.C.A. § 2609(2) (West 1989).

2. Based on his experience in other similar litigation, plaintiff's counsel has submitted that this refund will be approximately $5,000,000. Tr. of 11/29/94, at 4. This refund, of course, simply returns to class members money that they advanced to First Nationwide and is not a net gain to the plaintiffs.

3. As the class appears to number more than 100,000, members are expected to receive just a few dollars each as interest.

and Erna Lake for their duties as class representatives.

A hearing was held to consider conditional certification of the class and preliminary approval of the settlement on February 1, 1994. After entertaining arguments from counsel on the issues, the Court conditionally certified the class, granted preliminary approval to the settlement and the requested fees, and issued findings to that effect. *See Lake v. First Nationwide Bank,* 156 F.R.D. 615 (E.D.Pa.1994) [hereinafter *Lake I*]. Notice was given to the class of the proposed settlement. Approximately eighty-seven individuals responded by objecting to the settlement or by asking to be excluded from the plaintiff class. Upon the conclusion of the notice and opt-out period, the plaintiffs filed a motion seeking final certification of the class and final approval of the settlement, counsel's fees, and the class representative fee to the plaintiffs. A hearing to consider these issues was held on November 29, 1994. Having received additional material and further briefing on the relevant issues, the Court now sets forth its conclusions.

## II. DISCUSSION

### 1. *Certification of the Class*

█ This class action was conditionally certified for the purpose of concluding the settlement between the parties. The Third Circuit has declared that class actions created for the sole purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 792–97 (3d Cir.), *cert. den.,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). The Third Circuit has also directed district courts to "make findings because the legitimacy of settlement classes depends upon fidelity to the fundaments of Rule 23." *Id.* at 794. Since the Court has already made preliminary findings in this case, the issue is whether these findings should be made final.

A plaintiff seeking class certification under Rule 23 must demonstrate that the action satisfies the four threshold requirements of paragraph (a), and that the action qualifies under one of the three subdivisions of subsection (b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974). Paragraph (a) of Rule 23 specifies that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The plaintiffs also contend that the class action is qualified to proceed under Rule 23(b)(3). That section provides that a class action may be maintained if a court finds

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). This Court earlier found the criteria of Rule 23(a) and 23(b)(3) to be fully satisfied and gave its conditional approval to the class. *Lake I,* 156 F.R.D. at 622–26.

The parties allege that the facts subsequent to the Court's conditional certification have not changed, and the Court, after conducting a hearing, is not aware of any additional information which would alter its initial findings. Therefore, for the reasons given in the Court's memorandum opinion of July 29, 1994, *see Lake I,* 156 F.R.D. 615, the criteria

of Rules 23(a) and 23(b)(3) are deemed satisfied and the class shall be granted final certification.

### 2. *Approval of Settlement*

■ The parties seek final court approval of their settlement now that the class has been afforded notice of the settlement's proposed terms and an opportunity to comment on them. Prior to granting final approval to the settlement, the Court must find it to be "fair, adequate, and reasonable." *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir.1983). Significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class." *Austin v. Pennsylvania Dep't of Corrections*, 876 F.Supp. 1437, 1472 (E.D.Pa.1995). However, due to the risk that a collusive settlement agreement may be reached that fails to satisfy the class, a reviewing court must ascertain that the settlement was the product of "good faith, arms length negotiations" before granting its approval. *Fisher Bros. v. Cambridge–Lee Indus., Inc.*, 630 F.Supp. 482, 487 (E.D.Pa. 1985).

■ "In order for the determination that the settlement is fair, reasonable, and adequate 'to survive appellate review, the district court must show it has explored comprehensively all relevant factors.'" *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 805 (citing *Malchman v. Davis*, 706 F.2d 426, 434 (2d Cir.1983)). In conducting this analysis, the Third Circuit has instructed district courts to inform their decisions by the factors outlined in the leading case of *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975):

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

A number of reasons weigh in favor of approving this settlement. First, due to the relative complexity of the issues involved and the amount of data that would need to be processed, the costs of litigating this matter through trial would likely be high. With the excessive overages in this case alleged to have occurred in thousands of homeowner accounts which involve millions of computer entries, the task of poring through the relevant records would clearly be a significant undertaking.

■ Second, of the thousands of plaintiffs comprising this class, a relatively small number, less than ninety total, have either objected to the settlement or asked to be excluded from the class.[4] The Court is wary of placing too much emphasis on the lack of a large numerical opposition, particularly where much of the plaintiff class was given notice by way of publication. Nonetheless, the low number of objections or requests for exclusion bolsters the contention that this is not an unreasonable settlement.

Third, the Court is persuaded that the opinions of counsel on the issue of settlement were well informed. This is based primarily on factual investigation which was conducted by counsel over the one year period prior to the parties' submission of their settlement for preliminary approval.

■ Fourth, liability and damages will be difficult to establish. First Nationwide strongly disputes the merits of the plaintiff's

---

4. The objections asserted were by and large uninformed, based on the misapprehension that the formation of the class would interfere with the objector's contractual relationship with First Na-

tionwide, or consisted of a general complaint against lawyers in general making large fees in these types of cases.

position and claims that it has complied both with its mortgage agreements and with § 10 of RESPA. Moreover, as the Court has previously emphasized, it is not certain whether the plaintiffs have stated a viable claim under federal law, since it now appears increasingly clear that there is no private right of action under § 10 of RESPA. *See Louisiana v. Litton Mortgage Co.,* 50 F.3d 1298 (5th Cir.1995) (holding that no private right of action exists under § 10 of RESPA); *Allison v. Liberty Sav.,* 695 F.2d 1086, 1091 (7th Cir.1982) (same); *Herrmann v. Meridian Mortgage Corporation,* 901 F.Supp. 915, 923 (E.D.Pa.1995) (Pollak, J.) (holding that § 10 of RESPA does not provide for a private right of action and declining to follow this Court's prior opinion in this case, *see Lake I,* 156 F.R.D. at 621–22, on the basis of authorities decided since the issuance of that opinion); *Campbell v. Machias Sav. Bank,* 865 F.Supp. 26, 31 (D.Me.1994) (holding that no private right of action exists under § 10 of RESPA); *Michels v. Resolution Trust Corp.,* Civ. No. 4–93–1167, 1994 WL 242162, at *3 (D.Minn. April 13, 1994) (same); *Bloom v. Martin,* 865 F.Supp. 1377 (N.D.Cal.1994) (same); *Bergkamp v. New York Guardian Mortgagee Corp.,* 667 F.Supp. 719, 723 (D.Mont.1987) (same). *But see Allison v. Liberty Sav.,* 695 F.2d at 1091–93 (7th Cir. 1982) (Posner, J., dissenting from denial of rehearing *en banc*) (concluding that private right of action existed); *Vega v. First Federal Sav. & Loan Ass'n of Detroit,* 622 F.2d 918, 925 n. 8 (6th Cir.1980) (finding private right of action to exist).[5] Finally, while the actual monetary recovery will be slight, the settlement's injunctive relief ensures that excessive surpluses will not be held in escrow in the future.

Notwithstanding the above, factors exist which militate against approval of the settlement. Most notably, the parties contend that they have estimated First Nationwide's liability by using a sampling of homeowner accounts in order to determine the average amount by which those accounts exceeded a two month surplus for the payment of taxes, premiums, and other items.[6] Yet, the estimated damages extrapolated from this sampling were not submitted to the Court. Thus, both the maximum liability which could be found in this case and, more importantly, whether the settlement compares favorably to that perceived maximum remain unclear. Ordinarily, this factor alone would give the Court pause, warranting at least a fuller evidentiary showing. In this case, however, because the plaintiffs are unlikely to prevail on the issue of liability under RESPA, the calculation of damages becomes an exercise in conjecture.

Finally, public policy favors settlement. Factors which the Court has taken into consideration include the conservation of litigants' and judicial resources, the benefit, however slight, to the plaintiff class through the receipt of a refund, and the promise of corrective action by First Nationwide. These combined circumstances outweigh the minimal rights being surrendered by the absentee parties, in light of the likelihood that RESPA does not provide a private right of action.

Two additional factors, the possible inability to sustain the status of the class, and First Nationwide's ability to withstand a greater judgment, disfavor approval of the settlement. Yet, since the former appears rather unlikely and the latter is unclear based on the pleadings, given the Court's judgment that the plaintiffs are unlikely to establish a

---

**5.** The fact that various courts have issued opinions, including a highly persuasive one in this district, which have found no private right of action under § 10 of RESPA, does not signify that this Court is without jurisdiction to approve this settlement. "A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute." *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1281 (3d Cir.1993). Because the

Third Circuit has not decided whether an implied right of action exists under § 10 of RESPA, and given that there is some appellate authority supporting its existence, "the cause of action asserted by the Lakes is a non-frivolous cause of action sufficient to invoke this Court's federal jurisdiction under 28 U.S.C. § 1331." *Lake I,* 156 F.R.D. at 621–22.

**6.** The two months surplus is the maximum permitted by § 10 of RESPA. *See supra* note 1.

private right of action under RESPA, these factors evoke little concern.

Thus, the Court concludes that the settlement is fair, adequate, and reasonable.

### 3. *Approval of Attorneys' Fees*

■ The amount of attorneys' fees requested by class counsel in this case, $110,-000, was reached by way of an agreement between the parties. Under the agreement, any amount disapproved by the Court will revert to the defendant and will not be shared by the class. Furthermore, counsel for both parties have stated that the attorneys' fees were bargained for after they had reached an accord. Despite these stipulations, the Court is obligated to review the fees before granting its approval. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 819–20; *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 522 (1st Cir.1991) ("When a fee application is submitted ancillary to, or as part of, the termination of a class action, the district court should ordinarily determine the reasonableness of the fees, notwithstanding that the source of payment does not directly impair the class recovery.").

■ The first step in considering the approval of attorneys' fees in a class action settlement is to determine under which method counsel seeks its fees. Attorney fees may be sought under a statutory fee shifting context or recovery may be derived as a percentage of the common fund shared with the class plaintiffs. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821.

■ In statutory fee-shifting cases, the usual basis for awarding fees is the lodestar method. This method calculates the number of hours spent by counsel in the litigation, multiplied by a reasonable hourly rate. *See id.* The lodestar method may also be appropriate where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *Id.*

■ In situations where counsel and the class share a common fund, or where the fee and settlement are claimed to be indepen-

dent of each other, but actually derive from the same source, a percentage of the total recovery is more appropriate. *Id.* The percentage method prevents unjust enrichment of the class at the expense of counsel's time and resources, while rewarding counsel for success and penalizing it for failure. *Id.; see also* Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 250, 255 (1985).

■ Neither the lodestar method nor the percentage of recovery method, however, is mandatory. Thus, the district court has wide discretion to decide which method of fee calculation to apply. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821.

■ Plaintiffs' counsel asks the Court to approve its requested fees which were obtained through the percentage of recovery method. With the fee agreement in place, it would appear at first glance that there is no common fund from which to apportion attorneys' fees. The separate fee agreement between counsel in this case does not, however, oblige the Court to ignore the economic reality that a de facto common fund may exist. *See id.* ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). The fact that the amount to be recovered by the class plus the attorneys' fees come from the same source indicates that the requested fees may be analyzed as if they were derived from a common fund.

■ Yet, where a de facto common fund exists, awarding fees based on a percentage of the class's recovery may not be the best course of action if the settlement involves "hard-to-value intangible rights." *Id.* at 822. Therefore, where such rights are part of a class settlement, the lodestar analysis better ensures that a class counsel's fee award is neither over- nor undervalued. *See Cooperstock v. Pennwalt Corp.*, 820 F.Supp. 921, 926 (E.D.Pa.1993) (applying lodestar method where benefits to class were "unquantifiable").

In this case, the greatest benefit to the class members provided by the settlement agreement is First Nationwide's promise to take corrective action requiring fewer funds in customer escrow accounts. This result, however, is difficult to monetize. The future financial value of First Nationwide's promise to the class relies heavily on a number of currently unknown and nebulous variables, including interest rates, future property tax rates in different locales, and the time remaining on class members' mortgages. Class counsel has admitted that such an appraisal is difficult, if not impossible, to make with any certainty. The Court therefore will not undertake such a seemingly fruitless exercise. Instead, as it is plain that the precise evaluation required to determine a fee award based on the percentage of recovery method is unavailable here, the Court shall exercise its discretion and employ the lodestar method for calculating the appropriate amount of counsel fees.

 Determining the lodestar is merely a starting point from which to analyze counsel's fee request. The Court must first multiply the number of hours spent by class counsel in this litigation by a number representing a reasonable hourly rate. *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973). After this amount, the lodestar, is determined, the Court may make adjustments as necessary. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir.1984).

Counsel has submitted fairly detailed time sheets identifying the type of work done by its various attorneys, as well as the amount of time spent on each task. None of the time entries appear inflated nor do the entries appear extraneous or intended merely for the purpose of inflating the fees. Accordingly, the Court concludes that all hours claimed by class counsel shall be used for the lodestar calculation.

██ Counsel has also submitted a schedule of the attorneys who worked on the case and their respective billing rates. While the rates appear on the "high side" based on the Court's experience, they are not out of line with the market rate in the community for counsel of similar experience and skill.[7] Accepting as reasonable both the number of hours spent and the rates, the Court concludes that the amount submitted by counsel for the plaintiffs, $59,586.25, is the lodestar amount.[8]

 The lodestar may be increased by way of a quality multiplier if a court finds that the settlement was "achieved with unusual efficiency, and with little expenditure of attorney time and expense." *In re Fine Paper Antitrust Litig.*, 751 F.2d at 589. However, "the overall quality of performance ordinarily should not be used to adjust the lodestar, [so as to remove] any danger of double counting." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S.Ct. 3088, 3099, 92 L.Ed.2d 439 (1986). In the present case, the Court will not enhance the lodestar with a quality multiplier. To the extent that counsel's skill and experience helped shepherd the case efficiently, this factor has already been taken into account in approving counsel's high hourly rate. *See Rainey v. Philadelphia Hous. Auth.*, 832 F.Supp. 127, 130 (E.D.Pa.1993) ("Normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task."). Applying a quality multiplier in this case would result, therefore, in double counting. In any event, the Court does not agree that the litigation of this case reflected "unusual" efficiency on the part of counsel.

 The Court may also augment the lodestar by using a contingency multiplier. A contingency multiplier was previously used to reflect "the contingent nature of [the law-

---

7. Billing rates range from $65 an hour for temporary law clerks to $275 an hour for attorney Charles Zimmerman. The bulk of the time attributed to this case was billed by attorney Barry Reed, who provided his legal services at $250 an hour. Local counsel Cary Flitter, who also spent

some time on this case, billed at a rate of $200 an hour.

8. This amount consists of the total fees billed by Zimmerman, Reed and Lundy, Flitter & Beldecos.

suit's] success" and the "delay in the receipt of payment for services rendered." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976). In *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court ruled that a contingency multiplier based on the risk of the plaintiff's success could not be used to increase the lodestar under two federal fee-shifting statutes. This prohibition has subsequently been extended to common fund cases, making the likelihood that the plaintiffs would not succeed irrelevant for purposes of enhancing the lodestar. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 822 (stating that the relevance of *Dague* to a de facto common fund "was patent"); *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 619 (1st Cir.1992) (Lay, J., concurring) (applying *Dague* to a common fund case). *But see Florin v. Nationsbank of Georgia*, 34 F.3d 560, 564–65 (7th Cir.1994) (refusing to extend *Dague* to common fund cases); *In re Washington Public Power Supply Sys. Litig.*, 19 F.3d 1291, 1299–1301 (9th Cir.1994) (same).

▉ The Supreme Court's decision in *Dague* did not, however, rule out a multiplier based upon a delay in counsel's receipt of its fees. The parties initially petitioned the Court for preliminary approval of the attorneys' fees on December 28, 1993, after which the necessary steps for approval were taken. Given the time spent in the finalization process, a multiplier of 0.1 will be used to increase the fee award. Thus, the amount to be awarded to plaintiffs' counsel shall be $5,888.37 in costs and expenses and $65,544.88 in fees, for a sum total of $71,433.25.[9]

4. *Approval of Class Representative Fees*

▉ Having determined the award of attorneys' fees, the Court now turns to the

class representative fees sought by plaintiffs Michael and Erna Lake. Like the attorneys' fees in this case, if the Lakes do not receive a class representative fee, the fee will not be distributed to the class.

The Lakes seek a fee of $2,000 as compensation for the risk of retaliation by First Nationwide, for the time they spent assisting counsel, and for the fact that they would have been liable for costs incurred if this matter had not resulted in an award to the plaintiff class. Furthermore, they claim that they risked an invasion of privacy "by revealing their financial history to the public and risked acquiring public attention and public notoriety." Memorandum in Support of Plaintiffs' Motion for Approval of Application for Fees for Class Counsel and the Class Representatives at 12.

The Court disagrees that the Lakes were exposed to a realistic threat of retaliation, given their contractual relationship to the Bank under their mortgage. Yet, some allowance for the time that the Lakes spent prosecuting this matter and reimbursement for the actual costs they incurred would be reasonable.

Despite the Court's prior admonition that these fee requests would be subject to considerable scrutiny,[10] the Lakes have not provided an adequate indication of either the actual time they invested or the costs they incurred as a result of their involvement in this case. The Court's independent review of class counsel's time records discloses some reference, on three separate occasions, to counsel's conferences with what appear to be the Lakes. Yet, the amount of time during those three conferences which was spent with the Lakes remains unclear. Furthermore, class counsel stated at the November 29, 1994, hearing that both plaintiffs came to Philadelphia from the suburbs to discuss cer-

---

**9.** Local counsel shall be awarded $8,712 in fees and $677.88 in costs and expenses for a total of $9,389.88.

**10.** Previously, this Court stated:
Though the Court will preliminarily approve the settlement proffered by the parties, it views the proposed payment to the Lakes with a good deal of skepticism, and the parties will

need to make a stronger showing at the final hearing if they expect the Court's approval of this bounty. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 571–72 (7th Cir.1992); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 121, slip op. at 8–14 (E.D.Pa. May 27, 1994). *Lake I*, 156 F.R.D. at 627 n. 14.

tain escrow records and that the plaintiffs spent time answering phone calls from class members and being prepared for depositions.

Based on this record, the Court finds no justification in awarding a $2,000 fee to these plaintiffs. Instead, based on the time records and the comments by counsel, and making a slight adjustment for costs, the Court shall approve a class representative fee totalling $500 ($250 each) to both plaintiffs to compensate them for their actual time and expenses. No other fee shall be paid to the class representatives.

## III. CONCLUSION

The Court grants final certification to the proposed class and approves the settlement agreement between the parties. The Court further finds that attorneys' fees and costs in the amount of $71,433.25 are reasonable in light of the circumstances. A class representative fee in the amount of $500 is awarded to Michael and Erna Lake to account for the time and costs they spent during their involvement with this litigation.

Appropriate findings and an order shall be entered.

### FINDINGS AND ORDER

This matter came on for a hearing before the undersigned on Tuesday, November 29, 1994 on the motion of plaintiffs for final approval of the class action settlement entered into between the parties to the action. Defendant First Nationwide Bank ("First Nationwide") appeared in support of said motion.

The plaintiff class was represented by Charles S. Zimmerman and Barry G. Reed of the law firm Zimmerman Reed, 5200 Norwest Center, 90 South Seventh Street, Minneapolis, Minnesota; and Cary L. Flitter of the law firm of Lundy, Flitter & Beldecos, 450 N. Narberth Avenue, Narberth, Pennsylvania. First Nationwide was represented by Alan N. Salpeter and Jeffrey M. Strauss of the law firm of Mayer, Brown & Platt, 190 South LaSalle Street, Chicago, Illinois; and Arthur E. Newbold of the law firm of Dechert, Price & Rhoads, 4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, Pennsylvania. The issues with respect to the fairness of the proposed settlement and the attorneys' fees and costs sought by plaintiffs' counsel were briefed and argued. Based upon such briefs and arguments, and upon the other files and records in this matter, the Court **FINDS** and **ORDERS** as follows:

1. This action was commenced against First Nationwide in the United States District Court, Eastern District of Pennsylvania, on January 4, 1993.

2. The claims asserted by plaintiffs consist of one cause of action under § 10 of the Real Estate Settlement and Procedures Act ("RESPA"), and four causes of action asserting remedies under several statutes and common law.

3. This action may for all purposes be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), with the class consisting of all persons who have or had escrowed mortgage loans that are now, or were, serviced or subserviced by the defendant or its predecessors at any time from January 4, 1983 up to and including the date of the settlement agreement. This class includes subclasses of:

(a) "Open loan class members": subject to the last sentence of paragraph 25 of the settlement agreement, all persons who have escrowed mortgage loans that are being serviced or subserviced by defendant as of the date of the settlement agreement ("open loans"); and

(b) "Closed loan class members": all persons who had escrowed mortgage loans that were serviced or subserviced by defendant or its predecessors between January 4, 1983 and the date of the settlement agreement (the "closed loan period"), which loans were paid off, transferred or otherwise removed from defendant's books and records, or whose escrow accounts were waived by defendant or its predecessors during the closed loan class period ("closed loans"). The term "closed loan class members" shall include persons treated as closed loan class members pursu-

ant to the last sentence of paragraph 25 in the settlement agreement.

4. The plaintiffs as class representatives fairly and adequately represent the interests of the class.

5. The notice previously given to class members in this action satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

6. The settlement agreement is fair, adequate, and reasonable as to each member of the class.

7. Each member of the class (except those who have excluded themselves from the class pursuant to Rule 23 of the Federal Rules of Civil Procedure) is bound by the terms of the settlement agreement, including those regarding the ongoing servicing of their mortgage escrow accounts, and the release and covenant not to sue provided for in the settlement agreement between the parties. The mortgage contract of each member of the class is amended, as provided for in the settlement agreement, to expressly include the provisions for ongoing servicing of the mortgage escrow impound account in the manner provided for in the settlement agreement.

8. By September 12, 1996, or earlier at the election of First Nationwide, First Nationwide shall institute, or to the extent it has already been instituted, continue to use, the methodology for servicing the escrow accounts of the class members as set forth in the settlement agreement.

9. All sums to be paid under the terms of the settlement agreement shall be credited or paid to members of the class, as provided in the settlement agreement.

10. All claims in the litigation against First Nationwide are **DISMISSED** on the merits and with prejudice. Each member of the class is permanently **ENJOINED** from bringing against First Nationwide or any of its shareholders, directors, officers, employees or other released parties, as identified in the settlement agreement, any claim regarding the matters released in this litigation, as identified in the settlement agreement.

11. The Court hereby retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the settlement agreement between the parties.

12. The Court has reviewed the petition for attorneys' fees submitted by Zimmerman Reed and Lundy, Flitter & Beldecos and has determined that counsel shall receive, as and for compensation for their legal services, $71,433.25, to be paid by First Nationwide in accordance with the terms of the settlement agreement.

13. The Court has reviewed the request for class representative fees and has concluded that a fee totalling $500 is appropriate, and shall be paid in accordance with the terms of the settlement agreement. No other fee shall be paid to the class representatives.

14. The case shall be marked **CLOSED** for statistical purposes.